Peter A. Quinn, J.
This is an action to foreclose a mortgage instituted by the plaintiff as first mortgagee. A receiver was appointed. The premises here were neglected property in such deplorable condition that numerous and serious violations were placed on them by the authorities. In fact the Rent Commission had reduced the rental of the apartments to the nominal sum of $1 per month. The total income collected by the receiver from this 12-family house was only $364.82 in eight months. The receiver, faced with the problem of restoring this property to the rental market, accepted advances from the plaintiff to remove the violations and rehabilitate the structure and *24 re-establish profitable, lawful rents. These expenditures totaled $3,850.35. With other expenditures and disbursements paid by the receiver there is a deficit in his account of $4,208.49.
Subsequently, the Referee sold the property at foreclosure and he has a surplus in his account in the amount of $2,914.63.
The receiver on this motion has requested an order settling his account, for a discharge of the surety, for payment of commissions and for other relief. The plaintiff requests that such order direct that the surplus money in the hands of the Referee be applied to the receiver’s deficit. This is objected to by the second mortgagee, whose lien is next in priority to the plaintiff.
It is noted that the order appointing the receiver provided, ‘ ‘ that he shall not incur obligations in excess of the monies in his hands without further order of this court or the written consent of the plaintiff’s attorneys” (emphasis supplied). While the receiver did not apply to the court for permission to incur the obligations, it is clear that he must have had the necessary permission of the plaintiff’s attorneys since it was the plaintiff who advanced the moneys to rehabilitate this building. The order of appointment further provided that pursuant to rule 181 of the Rules of Civil Practice, the receiver was to keep accounts, open to inspection by any person whose rights were affected by the litigation. The objectant here, as second mortgagee, was such person and could have examined the account of expenditures and made potent, timely objections if such action was indicated. Instead, she was content to remain passive while these expenditures were made. To allow the somnolent second mortgagee to have these surplus moneys in reduction of her mortgage as against reimbursing the first mortgagee of whose active interest and funds they are the direct product would be somewhat less than equitable.
A surplus on the foreclosure sale of the property and a deficit in the receiver’s account is an unusual conjunction of events. It is brought about in this case by that villainous practice which has given rise to a new word in the polite vocabulary of contempt, scorn, obloquy, denunciation and strong epithet, “ slum lord”. The forces of State and local governments have long been at great pains through special investigations, drastically tightened regulations, intensive prosecutions, heavy fines and prison sentences and extraordinary legislative enactments to stamp out this vicious, antisocial practice: the deliberate, carefully calculated neglect of housing accommodations in depressed neighborhoods by callous, money-grubbing landlords until the houses are unfit for human habitation, meanwhile squeezing every penny of rental income from the luckless, long-suffering, largely help *25 less tenants who need heroic store of patience and endurance to pursue the necessarily slow process of constant, wearying appeals to already harried governmental authorities such as the Department of Housing and Buildings and the rent control office. It would seem the plainest dictate of enlightened public policy that a first mortgagee who advances funds to rehabilitate such property so that it again becomes a fit human abode should not be deprived of the benefit of his enterprise in restoring it to the rental market. If not rewarded, certainly he should not be penalized, and at least made whole. To hold otherwise would be to disapprove highly salutary conduct which in the public interest deserves to be encouraged.
Under the express terms of the mortgage, the plaintiff had the right to go into the premises, make such repairs as were necessary, and apply the cost thereof to the principal of the mortgage remaining unpaid. The appointment of a receiver, made at the instance and largely for the benefit of the plaintiff, should not be permitted to lessen the right which the plaintiff had as mortgagee. “ [T]he receiver’s unpaid debts incurred during the receivership, representing unpaid expenditures incurred in maintaining and preserving the property, should be given priority over parties whose claims are junior to plaintiff.” (Bowery Sav. Bank v. 566 Amsterdam Ave. Corp., 32 Misc 2d 459, 461.) The fact that the expenditures have been advanced by the plaintiff will not affect the priority, but rather, buttresses the claim.
Accordingly, the motion is granted, and the Referee is directed to pay over to the receiver the surplus money upon service of a copy of the order to be entered herein.
Section 1547 of the Civil Practice Act limits the receiver to commissions based on 5% of “ the sums received and disbursed by him”. He received $364.82 from the property, $3,850.35 from the plaintiff, and will receive $2,914.63 from the Referee. As 5% of this figure would be in excess of the amount requested, his commissions will be allowed in the sum of $350.