Edward Goodell, J.
This is an application by an administrator appointed pursuant to article 7-A of the Beal Property Actions and Proceedings Law for approval of his interim accounting and for the fixation of fees for services rendered by him.and by counsel for the administrator.
Essentially the issues presented for determination are the city’s rights in this proceeding and the matter of appropriate fees.
By order of Judge Tyler, dated August 7, 1968, Alexander A. Kolben, an attorney, was appointed administrator of two buildings known as 111 and 113-115 Henry Street. Subsequently, by order of Judge Tyler, filed on September 4, 1968, the administrator was authorized ‘ ‘ to retain an attorney to prepare and litigate petitions for non-payment of rent against any tenant who does not pay his rent” and was also authorized by said order ‘ ‘ to employ an accountant for the preparation of accountings required by the aforesaid order,” dated August 7, 1968. Pursuant to these authorizations the administrator retained Lester Greenberg as his attorney and engaged Lucy Laborde to render accounting services.
On July 9, 1969, the administrator applied for an order approving his interim accounting for the period from the date of his appointment, August 7, 1968, to March 1, 1969. That application was granted by order of Judge Tyler, dated August 11, 1969.
The present application covers a period subsequent to the period covered by the prior interim accounting, beginning March 1, 1969 and ending November 1, 1969.
The administrator’s accounting, covering both buildings, shows an opening balance as of March 1, 1969 of $1,232.30, which was the balance in the account as of the last date of the period covered by the prior interim accounting, plus total income for the period of the present accounting of $10,552.72 less $9,417.78 for expenses during that period, leaving, there *116 fore, a closing balance as of November 1, 1969, the end of the interim period covered by this accounting, of $2,367.14.
The City of New York in the capacity of a creditor/lienor and MFY Legal Services, Inc., representing the tenants, voice various objections to the application and, in the case of the city, to the accounting.
1. The .statute, subdivision 3 of section 771 of the Real Property Actions and Proceedings Law, provides that the notice of petition and petition in an article 7-A proceeding shall be served upon the owner and ‘ ‘ upon every mortgagee and lienor of record ”.
The city points to the fact that although it is a creditor and lienor it was not made a party defendant in the proceeding.
The city’s claim that it should have been joined as a defendant is based on the fact that it has open and unpaid real estate taxes against the subject property in the sum of $16,971.30, which it asserts is a recognized primary lien under section 172 of the New York City Charter, subdivision 3 of section 415(l)-7.0 of the Administrative Code and section 771 of the Real Property Actions and Proceedings Law. In addition, it is the claim of the city that ‘1 under its sovereign police powers ’ ’ it “ expended the sum of $2,669.50 for essential maintenance and emergency repairs at these premises pursuant to the provisions of § 56L-17.0 et seq. of the Administrative Code ” and that this claim is also a lien which “ has priority in this matter ”. It is the position of the city that the failure to name and serve it as a creditor lienor was substantially prejudicial to its rights in that its liens have priority under the Charter and the Administrative Code.
It should be observed at the outset in the discussion of the city’s position, that the failure to name and serve it as a party in the proceeding is not a fault attributable to the accounting party, the administrator, since the article 7-A proceeding was instituted by the tenants and the accounting party was designated the administrator of the property only after the proceeding had been commenced by the tenants and an inquest had been held and it had been found that ‘ ‘ there exist conditions 1 dangerous to life, health or safety ’.” (See order of Aug. 7, 1968.)
Prejudice to the city by failure to name and serve it as a party defendant might occur in one of two different ways:
Had it been joined as a party in the proceeding it might have pleaded as a defense, pursuant to section 775 of the Real Property Actions and Proceedings Law, that the condition or conditions alleged in the petition did not exist or had been removed *117 or remedied or, if the court had determined, after a trial, that the facts alleged in the petition had been affirmatively established, the city might have applied to the court, pursuant to subdivision a of section 777 of the Real Property Actions and Proceedings Law, for permission to remove or remedy the conditions specified in the petition and, if that had occurred, the court might have issued an order permitting it to perform the work.
We can only speculate now as to what the city or the court might have done had the city been joined as a party in the proceeding. It is not inappropriate to note, however, that despite the city’s expenditure of $2,669.50 for “ essential maintenance and emergency repairs,” the tenants felt constrained to institute the article 7-A proceeding because of conditions inimical to life, health and safety.
In any event, there is no reason in public policy why either of the foregoing rights, namely the right to interpose an answer or to undertake to remove or remedy the condition, may not be waived. (See Willy v. Mulledy, 78 N. Y. 310, 315; Emigrant Ind. Sav. Bank v. 108 West 49th St. Corp., 255 App. Div. 570.)
Nearly 20 months elapsed between the inception of the article 7-A proceeding and the making of the present application during which the administrator has not only collected the rents but has also applied them to the operation of the property and the making of repairs.
Perhaps it is because these steps cannot be reversed and perhaps also because fundamentally there was an emergency whose solution required the institution and prosecution of the 7-A proceeding, the city, despite the tenants’ failure to name and serve it as a party in the proceeding, has concluded the presentation of its objections with what I construe, despite its protests, as a considered waiver for practical reasons of the rights that it might have exercised pursuant to sections 775 and 776 of the Real Property Actions and Proceedings Law had it been made a party to the proceeding. The concluding sentence of the city’s affidavit of March 23, 1970 states that “ The foregoing supports the City’s position herein and unquestionably supports its contentions for priority and justification before any other expenditures in these proceedings. ’ ’
This is the nub of the matter insofar as the city is concerned, namely whether it is entitled to priority “ before any other expenditures in these proceedings ’ ’, and it is to that question that this opinion is now addressed.
2. The city has two claims here — one for taxes and the other for repairs.
*118 Insofar as taxes due to the city are concerned it is clear that the legislative purpose in enacting article 7-A was to provide an effective way to remedy and remove conditions that menace life, health and safety by the application of rents to accomplish that purpose as an objective prior and superior to the payment of taxes.
Apart from the legislative finding with regard to article 7-A that “ there exist in the City of New York multiple dwellings which contain the conditions hereinafter described and which endanger the life, health or safety of the occupants thereof,” section 769 of article 7-A explicitly provides that rents are to be used for that specific purpose, stating that a special proceeding may be instituted ‘ ‘ for a judgment directing the deposit of rents into court and their use for the purpose of remedying conditions dangerous to life, health or safety ”. As said in Kahn v. Riverside Syndicate (59 Mise 2d 238, 239) where the court denied an application requesting it to direct the administrator to reimburse the landlord out of the rents collected by him for moneys expended by the landlord to pay real estate taxes, “ The moving landlord misconstrues the thrust of article 7-A of the Beal Property Actions and Proceedings Law. The court construes the legislative purpose (Beal Property Actions and Proceedings Law, 770) is to cure the evils allowed to prevail and to cure the conditions mentioned. Nowhere does the Legislature provide that a court appointed administrator shall pay the carrying charges for the offending owner violating the law. * * * The rents collected are to be strictly applied to the uses that are allowed ’ ’.
Therefore the city is not entitled at this point to priority or to reimbursement out of the rents collected by the administrator for real estate taxes payable to it; nor, for that matter, would it have been so entitled, had it received permission to do the remedial work.
A different result, however, is appropriate to a limited extent with regard to repairs made by the city for the reason that in the instance of repairs the city has applied its funds to the purpose for which the statute was enacted and therefore the allocation of a share of funds collected by the administrator towards reimbursement of money expended for repairs is not only equitable in the circumstances of this case but is consonant also with the statutory objective.
In my view, however, the city is not entitled to receive priority as to such reimbursement with respect to the distribution of funds collected by the administrator. That would tend to frustrate the statutory purpose of applying rents collected as com *119 pletely as possible and with immediacy to the removal or remedy of conditions that are dangerous to life, health or safety rather than to divert them in whole or in part to a purpose, such as reimbursement, which does not serve to carry forward, without intervening delay, the vital process of prompt rehabilitation.
In the present case the city’s notice of lien as to repairs states that the first item of work performed by it was on or about December 28, 1966, about 18 months before the commencement of the article 7-A proceeding by the tenants. While the notice of lien states that the last item of work was furnished on or about November 21, 1969, it is fair to conclude that the major part of the work performed by the city took place prior to the 'administrator’s appointment since it does not seem probable that both were performing services concurrently without the knowledge of each that the other was so involved. This conclusion appears to be supported by the statement in the city’s affidavit of May 12, 1970 where it is stated that its “ emergency repairs were commenced in December of 1966 and preceded these administration proceedings by about 18 months.” The point, of course, is that the circumstances that prompted the tenants to commence the 7-A proceeding would not be ameliorated by giving priority to the payment of a past due indebtedness. (See in this connection schedules attached to letter of Mr. O’Connor to Mr. Fagen, Assistant 'Corporation Counsel, dated Feb. 26, 1970.)
Nor is priority warranted in favor of the city with respect to the balance in the administrator’s hands at the close of the accounting period since the statute, subdivision 2 of section 778 provides that the court 1 ‘ may allow from the rent moneys or security on deposit a reasonable amount for the services of such administrator.” Compensation for the services of the administrator is, therefore, an appropriate charge against the balance held by the administrator for services rendered by him since the date of his appointment.
In the present instance, in view of the unusual circumstances presented, in which, on the one hand, the administrator has been appointed and rendered services in good faith and, on the other hand, the city has been deprived of rights that it might have asserted had it been joined as a party defendant, neither is equitably entitled to priority over the balance in the administrator’s hands and these conflicting interests should be balanced in an effort to achieve a reasonably just allocation of this fund.
*120 3. In determining the question of the allocation of the balance of $2,367.14 consideration must be given to the other demands upon the fund.
In addition to the administrator, whose request is for $7,850 from the date of his appointment to November 1, 1969 and for $400 a month from November 1, 1969 until he is discharged, his attorney requests a fee of $1,012.50.
Insofar as the attorney for the administrator is concerned the authorization for his services, as previously noted, was to ‘1 prepare and litigate petitions for non-payment of rent against any tenant who does not pay his rent.” It is noted, however, that while the authorization granted to the administrator was expressly limited to the prosecution of nonpayment summary proceedings, the affidavit and supporting schedule for the attorney for the administrator dó not refer to or list any services in such proceedings. On the contrary such services appear from the administrator’s schedule of disbursements to have been rendered by Mark G-. Fresco, another attorney, who has been paid for those services.
It is noted, in addition, that the services that were rendered by the attorney for the administrator relate to the administrator’s first interim accounting, the present interim accounting and other services not embraced within the authorization granted to the administrator by the order of Judge Tyler. Moreover the administrator was authorized, as noted, “ to employ an accountant for the preparation of accountings.” It appears from the administrator’s schedule of disbursements that he did in fact engage an accountant to render service, Lucy Laborde, who appears to have been paid for her services. Such additional services as were rendered by the administrator’s attorney were services that could have been rendered by the administrator who is an attorney and whose selection as administrator was determined in part by the fact that as an attorney he met the qualifications specified in section 778 for the appointment of an administrator.
For these reasons, therefore, I am constrained to conclude that although the administrator’s attorney rendered services to the administrator they were services that he was not authorized to perform.
In these circumstances it is my conclusion that the balance of $2,367.14 in the administrator’s hands should be applied solely to the city’s claim for repairs and the administrator’s claim for services rendered by him.
The next question then is the determination of a reasonable fee for the administrator’s services.
*121 While the amount that he suggests of $25 an hour is reasonable in view of today’s standards, the administrator’s fee must be related to the amount of rents involved.
The suggested fee of $7,850 constitutes 40% of the funds that came into the administrator’s hands from the time of his appointment to the end of the accounting period. In my view this is excessive in relation to the total amount of the funds that have been the subject of administration.
In this connection it is noted that under section 778 of article 7-A the administrator is required to be either an attorney qualified to practice in this State or a certified public accountant or a licensed real estate broker. A reasonable deduction to be drawn from this provision is that the fee to be paid to an administrator appointed pursuant to article 7-A, whether he happens to be a lawyer, an accountant or a real estate broker should be commensurable for management services. The court takes judicial notice of the fact that in Manhattan the fee recommended by the 'Committee on Ethics, Commissions and Professional Practice of the Real Estate Board of New York as reasonable for management services of a real estate broker with regard to residential property is 4% of the gross collections to $100,000 annually. Since the services here include legal as well as management services, it is my view that a reasonable fee for the present in relation to the total amount of funds administered is 10% of that amount or $1,945.
In reaching this conclusion I am not unaware of current costs in the operation of a law office nor of the current standards for legal fees in New York City. Nevertheless there is a significant relationship between fee and the amount involved that cannot be disregarded. In this respect an article 7-A proceeding is no different than a litigation involving a relatively small amount of money. In such a case the amount at issue affects the size of the fee which may be materially less than the fee that can be charged in a litigation involving a substantially larger amount, even though the problems involved in the former situation may be as difficult and the time consumed as great.
In view of this conclusion as to the administrator’s fee, the difference between $2,367.14, the balance in the administrator’s hands as of the close of the accounting period, and the sum of $1,945, namely $422.14, should be applied on account of the city’s claim for repairs of $2,669.50. This constitutes nearly 16% of the city’s claim for repairs as against the administrator’s fee of 10% of the moneys received by him from the date of his appointment to November 1,1969.
*122 It is undesirable to determine at this time the administrator’s application for a fee of $400 a month from November 1, 1969 to such time as a final accounting is rendered. That should be determined upon a final accounting in the light of all the relevant facts relating to the subject property as they may then appear.
4. The city raises a number of miscellaneous objections to the accounting, among which are the following:
a. That 60 days’ accountings are expressly required.
The order of August 7, 1968 provides that the administrator ‘ ‘ shall submit an interim accounting to the court every sixty days.”
As I construe the order and section 779 of the Real Property Actions and Proceedings Law, the objective of the requirement for the filing of the interim accounting is to afford interested parties an opportunity to inspect.
The court ‘ ‘ may require a presentation or settlement of the accounts with respect thereto ” upon its own motion or the motion of an interested party.
Accountings, therefore, should be filed every 60 days until the final accounting at which time the administrator’s discharge will require the settlement of his account.
Settlement of any intervening interim accounting will not be necessary unless required as provided in section 779 of the Real Property Actions and Proceedings Law.
b. That various items of expense are not evidenced by specific bills or are ‘ ‘ miscellaneous and unexplained. ’ ’
While it is desirable that all items of expense should be evidenced by specific bills and should be explained, the administrator states in his supplemental affidavit that ‘ ‘ I have complete records of all receipts and disbursements which are ‘ open to inspection by the owner, any mortgagee or lienor or any other person having an interest in such receipts or expenditures. ’ (See Section 779 RPAPL). ’ ’
After examining the papers on file and hearing the administrator and his attorney, it would appear that the interim accounting for the period from March 1, 1969 to November 1, 1969 fairly reflects the receipts and disbursements of the administrator with respect to the subject property.
Nevertheless, in view of the unusual circumstances affecting this proceeding the city should have a reasonable time, if it so desires, to inspect the records in the administrator’s office relating to the administrator’s expenses with respect to the subject property during the period of the present interim accounting.
*123 Accordingly this application is disposed of as follows:
1. The administrator’s interim accounting for the period from March 1, 1969 to November 1, 1969 is allowed, approved and accepted, subject, however, to the privilege of the City of New York to inspect the records in the office of the administrator with respect to the items of expense or disbursement listed in the schedules of the administrator’s present interim accounting and to file further objections with respect to such items of expense within 60 days after the date of entry of this order as the City of New York, upon a proper showing, may claim are not substantiated to its reasonable satisfaction.
2. The application of the administrator for fees for services rendered by him for the period from the date of his appointment to November 1, 1969 is granted to the extent of $1,945, without prejudice, however, to the renewal of his application for fees for such services in connection with the administrator’s final accounting.
3. The application of the administrator for a fee for his attorney is denied.
4. The City of New York shall receive the sum of $422.14 out of the balance of $2,367.14 in the administrator’s hands as of November 1, 1969 on account of its expenditures for repairs amounting to $2,669.50, without prejudice, however, to the further application by the City of New York for additional distributions on account of or in full payment of the said sum of $2,669.50 out of the balances that may be in the administrator’s hands at the time of the filing of his succeeding interim • accountings or at the time of filing of his final accounting.