Bentley Kassal, J.
ISSUE
Does the judgment of foreclosure of a tax lien obtained by the City of New York ("City”) automatically oust an administrator appointed by the court pursuant to article 7-A of the Real Property Actions and Proceedings Law and, if not, how may the new owner proceed to remove the administrator and assume management of the property.
FACTS
Movant herein was appointed administrator of the subject *1040 premises by order of Judge Sheldon Levy on February 13, 1973. This occurred after the City and others had been served with the petition and defaulted in response. Thereafter, on November 29, 1974, a judgment of foreclosure was entered directing the conveyance of the property to the City. Petitioner herein was not served in the tax foreclosure proceeding. The judgment of foreclosure in its recital does make reference to "due mailing” of the notice of foreclosure to the owner of the property and to "any person having a lien or claim thereon, or interest therein”. No mailing of such notice was given to the administrator.
PROCEDURE
This matter comes before the court on a motion by the administrator for an order directing the City of New York to refrain from collecting rents in the premises, and the City has cross-moved for an order: (1) declaring the administrator judicially removed; (2) removing him; (3) directing an accounting and (4) vacating the original order appointing the administrator.
EFFECT OF FORECLOSURE
The Supreme Court, in awarding judgment to the City in the in rem tax foreclosure proceeding, directed that the Finance Administrator of the City of New York execute a deed conveying to the City full and complete title to the property herein, giving an estate in "fee simple absolute,” and stating that all persons who "may have had any right, title, interest, claim, lien or equity of redemption shall be barred and foreclosed.” Finally, upon execution of the deed the City was to be awarded possession of the property.
Neither the judgment of foreclosure nor chapter 17 of the Administrative Code of the City of New York (Administrative Code) states the effect of such a judgment on existing tenancies or how possession, awarded to the City, may be obtained.
Section D17-18.0 of the Administrative Code, however, provides that the City, after acquiring title, "shall be entitled to a writ of assistance, with the same force and effect as if the city had acquired the property by virtue of a mortgage foreclosure.” Section 415(l)-39.0 further provides that "[ejxcept as otherwise provided in this title an action to foreclose a tax lien shall be regulated by the provisions of the civil practice *1041 act and by all other provisions of law, and rules of practice applicable to actions to foreclose mortgages on real property.”
Thus, the effect of in rem tax foreclosure may be analogized to mortgage foreclosure and the decisions interpreting mortgage foreclosure procedure would apply to the issues herein. (See Weiss v Stone, 129 NYS2d 525; Edbro Realty Co. v Clarey, 141 Misc 779, affd 235 App Div 714.)
The best way to analyze the effect of the foreclosure proceeding is to start with its commencement. The City was named and actually served in the article 7-A proceeding and thereby had actual notice of the existence of the article 7-A administrator. However, neither the tenants nor the administrator were named or served in the foreclosure except by publication to the extent that notices of foreclosure listing the parcel in question were published pursuant to section D17-6.0 of the Administrative Code, but not listing them by name.
The City contends that neither the tenants nor the administrator need be made parties to the foreclosure.
Section 415(l)-39.0 of the Administrative Code clearly provides that "[i]n an action to foreclose a tax lien any person shall be a proper party * * * plaintiff has reason to believe that such person has or may have an interest in or claim upon the real property affected by the tax lien”.
The administrator clearly falls within the definition of "proper party”. In fact, next to the owner of the property, he is probably the most appropriate party, having been appointed by the court and empowered to manage, collect and disburse the rentals of the property. Finally, it is of interest to note that it has been held that an article 7-A administrator may not use the income of the property to pay real estate taxes until the conditions complained of in the article 7-A petition have been cured. (Kahn v Riverside Syndicate, 59 Misc 2d 238, revd on other grounds, 34 AD2d 515; Cole v Westlong Investors Corp., 65 Misc 2d 114.)
What then is the effect of the failure to join the tenants or the administrator in the foreclosure action? By analogy to a mortgage foreclosure, an occupant or person in possession of the premises at the time of foreclosure is an indispensable party, and if not made a party, he is not bound by the decree, nor can he be ejected until the expiration of his tenancy. (Scheidt v Supreme Woodworking Co., 212 App Div 179.)
Again, section D17-18.0 of the Administrative Code provides *1042 that the party obtaining title through foreclosure shall be entitled to a writ of assistance as in a mortgage foreclosure. Section 221 of the Real Property Actions and Proceedings Law governing such writs provides that the court may order that the title holder be put into possession "[i]f a party, or his representative or successor, who is bound by the judgment, withholds possession”.
As stated in Benn Riegel Contr. & Supply Co. v Siegel (110 Misc 710, 713-714): "The order contemplated by this section of the Code [now Real Property Actions and Proceedings Law, § 221] is an order directed against a party to the action or his representative or successor and not against a tenant who enters into possession of the premises under a lease prior to the commencement of the foreclosure action and whose possession is continuous. The reason why a tenant should be made a party to a foreclosure action is obviously that he may be bound by the judgment in foreclssure and that he may have the opportunity for asserting in the action any rights that he may have, in order that his rights, whatever they may be, may be properly adjudicated. To hold otherwise might result in the tenant being summarily removed by an order such as is asked for here without having any opportunity of asserting his rights. This would certainly not be equitable.”
In conclusion, I can but add that it would be similarly inequitable if the City were permitted to summarily defeat the rights of the tenants and the rights and authority of the administrator by the judgment in foreclosure — unless such parties had been served, directly knew the relief sought and had an opportunity to participate.
HOW MAY THE CITY PROCEED
An article 7-A proceeding is intended to remedy emergency situations (Kahn v Riverside Syndicate, 34 AD2d 515, supra), but this administrator was appointed almost two and one-half years ago. As suggested by the City, this leads to three possible conclusions: (1) the administrator has removed all of the serious conditions he was appointed to cure; (2) he is not administering properly; or (3) there is simply not enough income to effectuate the repairs (even omitting payment of real estate taxes, debt service and other charges). In any event, it would clearly be an appropriate occasion to re-examine this article 7-A proceeding.
Therefore, with the consent of the administrator the cross *1043 motion is granted to the extent only of setting the matter down for a hearing on this issue. Since the article 7-A order was signed by Judge Sheldon S. Levy, to whom the administrator has made accountings, I am respectfully referring such hearing to Judge Levy who will schedule a date for the hearing and so advise the parties.
The remainder of the motion by the administrator shall await the outcome of the hearing. The stay originally granted by Judge Levy on April 11, shall remain in force pending the hearing and the tenants shall pay rent to the administrator until further order of the court.