OPINION OF THE COURT
Meyer, J.
Neither the failure to obtain permission from the court which appointed a receiver in mortgage foreclosure to begin an action against him for personal injury incurred by plaintiff during his receivership, nor the fact that prior to service of the summons and complaint the receiver had been permitted to resign subject to an accounting and application for discharge being made by him and a substitute receiver appointed, constitutes a jurisdictional defect barring maintenance of the action. The order of the Appellate Division should, therefore, be reversed, with costs, and the orders of Special Term should be reinstated.
By order dated June 19, 1975, made in an action to foreclose a first mortgage on the premises known as 1502 Mott Avenue, Far Rockaway, New York, defendant Salomon was appointed receiver of rents and profits. The order authorized the receiver to keep the property in repair, no repair costing more than $500 to be made except by order of court made on notice. On November 29, 1975, plaintiff James Copeland, a tenant in the building, was injured while using the common stairway of the building. By summons and complaint dated May 3, 1976, Copeland and his wife began an action against Salomon to recover for the injury and for loss of consortium. The complaint alleged that defendant was acting in his official capacity as receiver on November 29, 1975, and that plaintiff had been injured by reason of defendant’s negligence.
Although defendant was the receiver on November 29, 1975, he sought permission to resign by motion dated January 30, 1976. By order dated February 17, 1976, defendant was permitted to resign, directed to file and obtain confirmation of his accounts and to “apply * * * for his discharge as such Receiver” and a successor receiver was appointed. What the status of the receivership presently is does not appear from the record, but by order entered October 6, 1976, defendant Salomon’s accounts *226 were approved and he and his surety were “discharged and relieved from all liability to any person, partnership, association and corporation as to all matters embraced in the * * * Receiver’s account.” No answer was served on behalf of defendant until February 18, 1977, when a pro forma answer was served, which admitted by failing to deny Salomon’s status as receiver at the time of James Copeland’s injury and control of the stairway on which he was injured, and asserted but one affirmative defense (of culpable conduct on plaintiff’s part). After the matter had been assigned to a Trial Part and a jury selected, however, defendant’s attorney moved before the Trial Judge to dismiss for want of jurisdiction.
The case was then returned to Special Term for consideration of the jurisdictional question. Special Term by order of May 20, 1980, stayed the action but denied defendant’s motion to dismiss without prejudice to renewal should plaintiffs fail to move within 30 days in the receivership proceeding for appropriate relief. Plaintiffs then moved in the latter proceeding for leave to sue Salomon as receiver and to vacate the order discharging him. The moving affidavit stated and defendant, though disputing its relevance, has not denied that the summons and complaint were forwarded to the insurance carrier whose liability policy covered both the owner and the receiver. By order dated July 22, 1980, the motion was granted to the extent of vacating the order discharging Salomon as receiver with respect to plaintiffs’ action, granting plaintiffs leave to sue, amending the title to show that Salomon was being sued “as receiver,” and vacating the stay.
The Appellate Division held that plaintiffs’ failure to comply with the condition precedent that leave be obtained prior to suit was jurisdictional and not curable by an order nunc pro tunc. It, therefore, reversed, on the law, the orders appealed from, granted the motion to dismiss the personal injury action and denied the foreclosure action application for leave to institute the personal injury action. We conclude that (1) plaintiffs’ failure to obtain leave of the foreclosure court prior to institution of this personal injury action was not jurisdictional; (2) Salomon was sued and was liable in his official capacity, was obliged as an officer *227 of the court to set forth plaintiffs’ claim as a contingent liability in his accounting to the foreclosure court and to give plaintiffs notice of that accounting and moreover, under the limited language of the order of October 6,1976, has never been discharged as to that claim; and (3) in any event, Special Term had the authority to make the order of July 22, 1980 in the receivership proceeding vacating Salomon’s discharge as to plaintiffs’ claim and granting them leave to sue, and under the circumstances of this case it would have been an error of law not to do so. We, therefore, reverse and reinstate the Special Term orders appealed from.
I
We have previously noted the confusion that arises because the word “jurisdiction”, which with respect to subject matter means the power of a court to adjudicate concerning a category of cases, is also inexactly used to refer to the situation in which the absence of a condition precedent requires dismissal of a particular case notwithstanding that the court has jurisdiction of the subject matter (Nuernberger v State of New York, 41 NY2d 111, 117; Thrasher v United States Liab. Ins. Co., 19 NY2d 159, 166). Generally, though not necessarily, the condition is statutory in origin (Salesian Soc. v Village of Ellenuille, 41 NY2d 521, 526 [notice of claim]; Thrasher v United States Liab. Ins. Co., 19 NY2d 159, 166, supra [notice of entry of judgment against insured]). The omission of such a condition does not necessarily bar the claim entirely. If no time limit for compliance with the condition is established, or the established time limit is still open, or CPLR 205 operates because of the defectively commenced action to extend the time limit, the omission can be supplied and the action or a new action replacing it will be decided on the merits (e.g., Garrick v Central Gen. Hosp., 51 NY2d 242; George v Mt. Sinai Hosp., 47 NY2d 170).
The power to appoint a receiver in foreclosure proceedings, though now touched upon by RPAPL 1325 (see, also, CPLR art 64), stems not from statute but from the inherent powers of the Court of Chancery (Hollenbeck v Donnell, 94 *228 NY 342, 346). The rule that leave of the appointing court be obtained before suing such a receiver was devised in order to protect the receiver and the estate against the harassment and expense of possibly unnecessary litigation and to preserve the estate in the hands of the receiver for the benefit of all creditors equally (Metropolitan Sav. Bank v Residual Realties, 102 Misc 2d 1105; James v James Cement Co., 8 NY St Rep 490; Hubbell & Curran v Dana, 9 How Prac 424). It arose also from the fact that, because the property is held by the receiver as an officer of the court, of as it is sometimes said, as the hand of the court, interference with the property by the bringing of an action without leave may constitute contempt (Matter of Directors of Christian Jensen Co., 128 NY 550, 553; People ex rel. Attorney Gen. v Security Life Ins. & Annuity Co., 79 NY 267, 270; Foster v Toumshend, 68 NY 203, 206; Chautauque County Bank v Risley, 19 NY 369, 377; Pruyn v McCreary, 105 App Div 302, 304, affd 182 NY 568; see Anns., 39 ALR 6; 48 ALR 241).[1]
Nothing in the reasons upon which the rule is based mandates a holding that failure to obtain leave is a fatal and incurable error, nor although we recognize that there is a division in the lower courts on the question (see 7A Weinstein-Korn-Miller, NY Civ Prac [1981 Supp], par 6401.19, p 75; compare McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C6401.4, p 408), do we believe that the rule applied by the Appellate Division is the correct view. Thus, in Johnson v Smith (297 NY 165, remittitur amd 297 NY 954, cert den 335 US 824), we held that property in the hands of a receiver could be sold by the county treasurer for taxes without obtaining leave of court, and as part of the analysis noted in dictum “that, while propriety may suggest an application to the court before selling property possessed by a receiver, the *229 failure to obtain leave neither defeats the action brought * * * nor invalidates the sale effected” (297 NY, at p 172). More closely in point because it is a flat holding rather than obiter and concerns commencement of an action against a receiver rather than sale of property in his possession is Pruyn v McCreary (105 App Div 302, supra), in which we affirmed, without opinion, but answered in the affirmative two certified questions asking whether the Supreme Court had jurisdiction of the person of the receiver and whether it had jurisdiction of the subject matter of the action (182 NY 568). The import of the affirmative answers given becomes clear when the Appellate Division opinion is read, for the rule it states is diametrically opposed to that applied by the Appellate Division in this case, as the following passage shows (at p 304): “The commencement of an action against a receiver without leave does not affect the jurisdiction of the court. (Hirshfeld v. Kalischer, 81 Hun, 606.) The rule requiring leave to sue a receiver is not statutory and is not elementary to the action. Suing without leave is purely a question of contempt of court. (Chautauque County Bank v. Risley, 19 N. Y. 369.) The court, on motion, may set aside or stay the proceeding commenced without its sanction, but until the court interferes the action is regular. (Hackley v. Draper, 4 T. & C. 614; affd., 60 N. Y. 88.)” The Hackley case, affirmed by us, held that, until the appointing court holds otherwise, an action brought without permission against a receiver is regular, and in Chautauque, which involved a sale, we not only said (19 NY, at p 377) with respect to the creditor’s failure to obtain leave that “the question is merely whether the court will consider him in contempt and punish him accordingly. The sale itself is but the assertion of a legal right, and it cannot be illegal and void on the ground that the leave of an equitable tribunal is not first asked and obtained”, but also refused to follow a contrary decision of the United States Supreme Court.
The cases cited in Kilarjian u Kilarjian (32 AD2d 542), upon which the Appellate Division relied, other than its own prior decision in Wildermuth v Pious (21 AD2d 912), do not support the conclusion reached in this case, for Thompson v Brunswick-Balke-Collender Co. (288 NY 550) *230 and Foster v Townshend (68 NY 203) both involved actions brought by a receiver without permission. Moreover, the defect not being jurisdictional, the court in which the action had been begun was free to consider it regular and permit it to continue subject to the later order of the appointing court (Pruyn v McCreary, 105 App Div 302, affd 182 NY 568, supra; Hackley v Draper, 4 Thomp & C 614, 631, affd 60 NY 88, supra; Di Chiara v Sutherland, 62 Misc 555) or, as was done by Special Term, to stay the action pending an application to the appointing court for leave nunc pro tunc (Town of Greenburgh v Shalleck, 247 App Div 813; M. P. Moller, Inc. v Farley, 219 App Div 750, affd 246 NY 562; Le Fevre v Matthews, 39 App Div 232; Hirshfeld v Kalischer, 81 Hun 606, supra; James v James Cement Co., 8 NY St Rep 490, 492, supra), or to dismiss the action without prejudice to recommencement after such leave had been obtained (Matter of New York Municipal Ry. Corp. v Holliday, 189 App Div 814, 820, affd 228 NY 561), as appropriate in the particular case (see, generally, Ann., 29 ALR 1460). Moreover, the appointing court, upon application to it, could, in its discretion, either grant leave nunc pro tunc with or without a contempt penalty (Chautauque County Bank v Risley, 19 NY 369, supra; Le Fevre v Matthews, supra; James v James Cement Co., supra), or condition leave or deny it outright as it found necessary and appropriate for the protection of creditors in and parties to the receivership proceeding (Matter of Directors of Christian Jensen Co., 128 NY 550, supra; Matter of Commercial Bank, 35 App Div 224).
It was, therefore, error for the Appellate Division to reverse on the law and order the complaint dismissed.
II
Prior to September 1,1946, the law as to the liability of a receiver in foreclosure was in some confusion. Although other receivers were held liable officially for torts committed by the receiver or his employees in the administration of the receivership and damages awarded in such an action were a receivership expense (Leal v Westchester Trust Co., 279 NY 25, 31), a receiver in foreclosure not guilty of affirmative negligence and permitted but not required by the order appointing him to keep the property in repair *231 was liable neither officially nor personally (Woman’s Hosp. of State of N. Y. v Loubern Realty Corp., 266 NY 123; Reynolds v Graham, 250 App Div 787, affd 276 NY 555; see Cardot v Barney, 63 NY 281).
In a comprehensive study of the problem, the Law Revision Commission in 1936 noted that the effect of the casé law was to encourage mortgagees, while allowing the property to fall into disrepair, to continue receiverships so as to avoid liability for disrepair, and that that was an injustice to tenants of the property and had resulted in a proposal that receivers be required to maintain liability insurance, which as a matter of common practice many of them obtained in any event (1936 Report of NY Law Rev Comm [Legis Doc, 1936, No. 65], pp 627, 646-648, 652-653). The commission, therefore, recommended passage at the 1936 session of legislation that would make a receiver in foreclosure liable to the same extent as the owner (id., p 621).
Not until 1946, after a further report from the Law Revision Commission which noted that it was anomalous not to impose liability upon a receiver for passive negligence in view of the fact that the State had accepted liability for its own passive as well as active negligence, and that “It is not uncommon for a receiver to take out liability insurance in terms broad enough to cover passive negligence. In such a case, under the rule which exempts the receiver from liability for passive negligence, there is a resulting windfall to the insurer” (1946 Report of NY Law Rev Comm [Legis Doc, 1946, No. 65], p 26), was legislation, now known as section 9-101 of the General Obligations Law, enacted. That section provides that: “A receiver of rents and profits appointed in an action to foreclose a mortgage upon real property shall be liable, in his official capacity, for injury to person or property sustained by reason of conditions on the premises, in a case where an owner would have been liable. Nothing herein contained shall be construed to enlarge the liablity of the receiver in his personal capacity.”
 There can be no question, therefore, that Salomon as receiver at the time James Copeland was injured was subject in his official capacity to liability to plaintiffs, *232 whether the negligence in maintenance of the stairway was active or passive. Moreover, by appearing in the action without objecting to jurisdiction, the receiver subjected himself to the jurisdiction of the court over his person as receiver in an action over which there was no impediment to its subject matter jurisdiction (Pruyn v McCreary, 105 App Div 302, 305; supra; People v Square Deal Poultry Corp., 218 App Div 746; Hubbell & Curran v Dana, 9 How Prac 424, supra). Nor did the transfer of his interest as receiver in the property to the substitute receiver require that the latter be substituted in the action for Salomon; if the action Was properly begun against Salomon it could be continued against him notwithstanding the transfer (CPLR 1018; 2 Weinstein-Korn-Miller, NY Civ Prac, par 1019.03).[2] Furthermore, the complaint having expressly alleged that Salomon was acting at the time of plaintiff’s injury in “his official capacity as a receiver,” the omission from the title of the words “as receiver” is no more than an irregularity to be disregarded pursuant to CPLR 2001 and 3026.
A receiver, as already noted, acts as the hand of the court. Damages for injuries to persons or property during the receivership caused by the negligence of the receiver or his agents or employees are part of the expenses of administration payable out of receivership funds or out of the property held by the receiver and as such entitled to priority over creditors whose claims precede the receivership (Kain v Smith, 80 NY 458, 470; Robinson v New York & Staten Is. Elec. Co., 99 App Div 509, 512). Though generally a receiver stands indifferent as between creditors, he is bound to see to it that each has an opportunity to enforce his claim and to give them reasonable aid in doing so (People ex rel. Attorney Gen. v Security Life Ins. & Annuity Co., 79 NY 267, 271, supra) and if with knowledge of a claim he nonetheless pays out all of the receivership funds he may incur personal responsibility for the payment of such a claim (Robinson v New York & Staten Is. Elec. *233 Co., supra; see Alexander v Valumet Chocolate Co., 240 App Div 769).
These obligations as to general creditors apply, a fortiori, to priority administration expense creditors, fixed or contingent. Moreover, “creditors, though not parties to the suit, have a right to be heard” concerning distribution and apportionment of receivership funds (Kilarjian v Kilarjian, 32 AD2d 542, supra; see Klasko Fin. Corp. v Belleaire Hotel Corp., 257 NY 1, 4). As to the Copelands, therefore, the discharge of Salomon as receiver, had it been worded broadly enough to discharge their claim,[3] would nevertheless have been void for want of notice (Miller v Everest, 212 NW2d 522 [Iowa]). In the Miller case a tenant of a building in receivership died of injuries sustained in a fall on ice in the building parking lot. The receiver in foreclosure was, however, discharged before the executor brought suit and the trial court dismissed the action on the ground that as receiver the defendant could not be sued after he had ceased to be such and that individually he was not liable for passive negligence. The Supreme Court of Iowa affirmed as to individual liability but reversed as to the receiver in his official capacity and held the discharge order void as to the executor for want of notice. To hold the tort claimant barred, it said, would:
“work injustice and cannot withstand close scrutiny.
“The present case affords a good example. Here a tort was committed (we are assuming) during the course of the receivership. Before the personal representative of the deceased person started her action against the receiver, the receiver, without notice to the personal representative, obtained his own discharge — and thereby, we are told, terminated his liability.
“We cannot believe such a rule would be good law. Meritorious claims ought not come to an end before the statute of limitations has barred them by a receiver’s simply securing his own discharge without notice to the claimants” (212 NW2d, at p 524).
*234 The facts that the substitute receiver may have paid out the funds collected and that the property involved may be back in the hands of the mortgagor or have been sold in foreclosure is no greater bar to the action. In the first place, “[Liability is not synonymous with ability to pay” and it, therefore, is not a condition of suit that the receiver be in funds to pay it (Gabriele v Kent Realty Co., 150 Misc 415, 417). More importantly, however, should there be liability insurance covering the receiver, as the moving papers indicate, the Copelands, if they recover judgment against Salomon, will be entitled to proceed against the carrier directly under the provisions of section 167 (subd 7) of the Insurance Law, and if, perchance, there is no such coverage, the receiver or his successor may, as above noted, have incurred personal responsibility for disbursing receivership assets without notice to the Copelands.
Clearly, therefore, the action should be permitted to proceed.
Ill
Thus, the receivership remained open as to plaintiffs and that part of the order of July 22, 1980 which vacated the prior order discharging Salomon was not technically necessary. There is, however, abundant authority for making such an order under circumstances such as are present in this case (Matter of New York & Western Union Tel. Co. v Jewett, 115 NY 166,170; Matter of Gant v Levine, 52 AD2d 925; 149 Clinton Ave. North v Grassi, 51 AD2d 502, 506; Moskowitz v Rothman, 274 App Div 999; Matter of Frankle, 241 App Div 767; see Ferguson v Toledo, Ann Arbor & North Mich. R. R. Co., 85 App Div 352, 354, affd 183 NY 557). Lilienthal v Betz (185 NY 153), upon which defendant relies, is not to the contrary, for it held only that the discharged receiver was not a necessary party to an action to set aside the transfer of assets brought about by the same fraud that induced discharge of the receiver, and did not deal with whether an order discharging a receiver can be vacated under the circumstances of this case. Because the discharge order was void as to plaintiffs, vacatur of it was unnecessary but not improper. But because the discharge order had it covered plaintiffs’ claim would have been void, the Appellate Division order reversing Special *235 Term’s July 22, 1980 order and denying leave to sue was erroneous as a matter of law.
For the foregoing reasons, the order of the Appellate Division should be reversed, with costs, and the orders of Special Term reinstated.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, with costs, and the orders of Supreme Court, Queens County, reinstated.

. Support for the contrary view may be thought to exist in Walling v Miller (108 NY 173, 178). It held “wholly illegal and void” the sale, without leave of the appointing court, of real property held by a receiver under an execution on a judgment against the debtor for whose property the receiver was appointed. But there is a clear distinction between a sale of property which is part of the receivership and making a claim against the receiver by instituting suit against him. Moreover, the status of Walling as authority is far from clear (see Johnson u Smith, 297 NY 165, 173, infra; Beardslee v Ingraham, 183 NY 411, 422; Moore v Potter, 155 NY 481, 489-490).

. Failure to substitute would not be jurisdictional (Baer u McCullough, 176 NY 97, 101; Dougherty v King, 41 App Div 1, 4, revd on other grounds 165 NY 657; 2 Weinstein-Korn-Miller, op. cit., par 1018.02).

. In fact Salomon was not discharged from liability to plaintiffs even by the order of October 6,1976, for that order only relieved him from liability as to matters embraced in his account, which so far as the record shows made no mention of plaintiffs’ claim.