**In re STUDIO # 54 DISCO, INC. Debtor.**

**Bankruptcy No. 881–81935–20.**

United States Bankruptcy Court, E. D. New York.

June 29, 1982.

Holland & Zinker by Edward Zinker, Smithtown, N.Y., for debtor.

Wolin & Wolin by Alan E. Wolin, Mineola, N.Y., for PDJ.

Shaw, Goldman, Licitra, Levine & Weinberg by J. Stanley Shaw, Garden City, N.Y., for Palmer D. Farrington.

Palmer D. Farrington, receiver.

Richard Cohen, New York City, for Manufacturer's Hanover Trust.

## MEMORANDUM AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

Palmer D. Farrington, the Receiver of Pee Dee Jay Amusement Corp. ("PDJ") moves this Court for an order (1) directing Manufacturer's Hanover Trust Company ("Manufacturer's Hanover") to restore $29,-454.15 to the Receiver's account;[1] (2) approving the Receiver's account; (3) fixing his commissions and counsel fees; (4) directing that Studio # 54 Disco, Inc.[2] ("the debtor") pay the Receiver any deficiency between the sums awarded and the balance on hand in his account; (5) cancelling his undertaking and discharging himself and the surety on such undertaking.

### Background

On 14 March 1979, the debtor executed a written agreement for the purchase of a restaurant and discotheque business located at 170 Old Country Road, Westbury, New York from PDJ. PDJ, it should be noted, was itself the assignee of Nassau-Mineola Restaurant, Inc. ("Nassau-Mineola") who had sold the restaurant to PDJ in March of 1978 in a transaction involving some $150,-000 in notes and the alleged assignment of the lease by PDJ back to Nassau-Mineola as security therefor.

The relevant terms of the debtor—PDJ agreement provided for a $5,000 deposit on contract, $10,000 cash on closing, the debtor's assumption of the outstanding balance on the PDJ—Nassau-Mineola notes and the debtors execution of 72 notes running di-

---

1. Although contained in the Receiver's "Account" annexed to his Notice of Motion, this request for relief was omitted from the actual Notice of Motion. Additionally, it was only at the 4 March 1982 hearing that similar relief was requested by the Receiver vis-a-vis PDJ. However, inasmuch as the Court is denying both requests on the merits, the Court does not have to address the issue of lack of proper notice.

2. It was only after the March 4 hearing that the Court was made aware of a letter dated 1 February 1982 from the Receiver's attorney, Mr. Shaw, to the Trustee's attorney, Mr. Backenroth, which indicated that Mr. Shaw considered this naming of the debtor an error and intended it to have read PDJ. Accordingly, the Court deems the application to hold the debtor's estate liable for these fees to have been withdrawn.

rectly to PDJ representing approximately $94,000 of the purchase price. Additionally, the agreement provided that PDJ's attorney would hold the last 24 notes in escrow to insure the debtor against unpaid obligations of PDJ. Finally, the closing was to take place after notification that the debtor had obtained its liquor license.

Thereafter, on 5 June 1979, the debtor notified PDJ that it had obtained the approval of the State Liquor Authority. PDJ, however, refused to close asserting (1) that the debtor had fraudulently obtained this approval, and (2) that PDJ was prohibited from transferring title by virtue of a restraining notice served on PDJ in an unrelated action. Consequently, on 15 August 1979, the debtor commenced a breach of contract action against PDJ in Nassau Supreme Court, and thereafter moved for summary judgment and the appointment of a receiver, which relief was denied by Justice Lockman on 3 January 1980. However, upon the debtor's motion for leave to reargue, Justice Lockman, by an order dated 19 May 1980, granted the debtor summary judgment although he still denied the appointment of a receiver. *See Studio # 54 Disco, Inc. v. Pee Dee Jay Amusement Corp.*, 104 Misc.2d 536, 428 N.Y.S.2d 806 (Sup.Ct. Nassau County 1980).

Thereafter, PDJ still refusing to close, the debtor moved for an order compelling PDJ to close, or alternatively, for the appointment of a receiver. PDJ cross-moved to reargue the grant of summary judgment based on the assertion that the approval of the State Liquor Authority had in fact not been obtained and that there was a material question of fact concerning several alleged riders to the contract amounting to some $71,000. By an order dated 17 July 1980, Justice Lockman granted the debtor's motion for an order compelling PDJ to close and denied all of the other relief. Thereafter, PDJ still refusing to close, the debtor once again moved under CPLR 5106 for the appointment of a receiver to effectuate the closing which was granted by Justice Pantano on 20 August 1980. Consequently, by an order dated 8 September 1980, Justice Pantano appointed Palmer D. Farrington "receiver of all of the property of the defendant Pee Dee Jay Amusement Corp." and provided that he post a $50,000 undertaking.[3]

However, the closing did not take place immediately thereafter due to the fact that

---

**3.** In addition the order provided:

ORDERED that the receiver shall take possession of all the assets of the defendant herein and shall promptly consummate the transaction contemplated in the agreement of March 14, 1979 appended to the complaint, on behalf of such defendant and execute on behalf of defendant all documents necessary to transfer to the plaintiff herein all of the property as contemplated by such agreement, including chattels, leases, contracts, accounts, licenses, trade names, etc., with title thereto to vest absolutely in STUDIO # 54 DISCO INC., the plaintiff herein; and it is further

ORDERED that pending the closing and consummation of the aforesaid transaction, the receiver shall continue the operation of the business of the defendant under existing licenses and leases and shall take all action reasonably necessary or useful towards consummation of the aforesaid transaction; and it is further

ORDERED that the receiver may keep written accounts itemizing receipts and expenditures as required by CPLR 6404; and it is further

ORDERED that the receiver may employ counsel of his choice if reasonably necessary or useful to accomplish the purposes of this order; and it is further

ORDERED that all of the expenses incurred by the receiver, including his remuneration and the fees of legal counsel, if so employed, shall be a charge against the defendant and shall be paid from the funds to be paid by plaintiff as part of the closing; and it is further

ORDERED that upon service of a copy of this order upon Tillim & Sacca, Esqs., they shall forthwith deliver to the receiver the down payment of $5,000 being held by them in escrow together with all interests accrued thereon; and it is further

ORDERED that the disposition of the proceeds of the sale to be consummated pursuant to this order shall await further order of the court to made on application and notice to all parties. [sic]

ENTER

B. THOMAS PANTANO, J.S.C.

the State Liquor Authority was apparently reconsidering its approval of the debtor's liquor license which, in the Receiver's opinion, was a condition precedent to the closing, whereupon the debtor moved Justice Pantano for an order compelling the closing. By an order dated 30 October 1980, Justice Pantano directed the Receiver to "proceed forthwith to close the sale in accordance with the contract." Accordingly, on 31 October 1980, the Receiver transferred title of the premises to the debtor. In consideration for which the Receiver collected $15,000 in cash on the closing. Thereafter, up until 22 May 1981, the Receiver collected the debtor's payments on five of its notes plus some miscellaneous other payments all totaling $32,150.34. Therefore, after disbursing $2,696.19 in expenses, the Receiver's account at Manufacturer's Hanover on 26 May 1981 stood at $29,454.15.

In the interim, however, PDJ had appealed the order granting the debtor summary judgment. PDJ had failed, however, to obtain a stay pending such appeal. In any event, by an order dated 26 May 1981, the Appellate Division, Second Department reversed the orders dated 19 May and 17 July 1980 which had granted the summary judgment and vacated the 8 September 1980 order which had appointed the Receiver. The Appellate Division order was silent, however, as to the disposition of the proceeds in the Receiver's account and on the issue of who was entitled to possession of the premises. *See also Studio # 54 Disco, Inc. v. Pee Dee Jay Amusement Corp.*, 81 A.D.2d 911, 439 N.Y.S.2d 395 (2d Dep't 1981).

That notwithstanding, PDJ contacted Manufacturer's Hanover who, without notice to the debtor nor the Receiver, released the $29,454.15 to PDJ on 2 June 1981 ostensibly on the authority of the Appellate Division order. Simultaneously, both the debtor and PDJ moved the Appellate Division to

determine who was entitled to possession of the premises; whereupon the Appellate Division, by an order dated 3 June 1981, sent the issue down to Special Term thereby leaving the debtor in possession pending that determination.

It is at this point that this Court became involved in these proceedings.

On 4 June 1981, the debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* (Supp. IV 1980) which was converted by the debtor to a chapter 11 proceeding on the next day. Simultaneously this Court at the debtor's request issued an order restraining PDJ from interfering with the debtor's possession of the premises pending a determination of the question of title.[4]

Thereafter, based on evidence of the dissipation of assets, James Barr was appointed the Trustee of the debtor on 26 June 1981 and on 8 July 1981 he closed the premises to prevent any further loss of assets.

By this time the main lease was several thousand dollars in arrears. Consequently, by the time the question of title could have been determined, the prime landlord would have been entitled to evict everyone. Based thereon, the Trustee, who was aware that the principals of PDJ had withdrawn the money from the Receiver's account, entered into a stipulation with PDJ and its principals which was approved by this Court on 24 September 1981 after a hearing on notice to, *inter alia*, the Receiver.

Under the terms of the stipulation, PDJ ratified the debtor's title and relinquished any claims it had against the debtor; the debtor assumed the lease and assigned it free and clear of all liens[5] to a new corporation formed by the principals of PDJ for approximately $113,500; the debtor released all of its claims against PDJ or its principals.

This transaction was affirmed on appeal by Judge Mishler. *Nassau-Mineola Restau-*

---

**4.** PDJ appealed this order which appeal was argued on 11 June 1981 before Judge Mishler who reserved decision. Subsequent events, however, mooted this controversy.

**5.** The Receiver was named as a party defendant in the action by the Trustee to sell the lease and premises free and clear of any liens.

rant, Inc. v. Barr (In re Studio # 54 Disco, Inc.), No. CV 81–3140, Slip op. (E.D.N.Y. 1 March 1982).

In the interim, back in February 1981, PDJ had moved before Justice Spatt of Nassau Special Term for leave to sue the Receiver based on the Receiver's closing title without taking up the issue of the $71,000 in riders which were allegedly part of the original contract of sale. Justice Spatt denied the motion by an order dated 18 February 1981 with leave to renew after the Receiver had filed an accounting. PDJ, being dissatisfied with the accounting which was eventually filed, thereafter renewed its motion for leave to sue. It was again denied by Justice Spatt, this time on the grounds that inasmuch as it related to a now pending bankruptcy, jurisdiction was only in this Court. Accordingly, he directed PDJ to renew its motion in this Court.

On 30 November 1981, this Court heard PDJ's motion for leave to sue the Receiver.[6] Inasmuch as the Receiver did exactly what the various orders of the New York Supreme Court directed him to do, this Court ruled that PDJ had failed to allege a claim for relief. Accordingly, the Court denied PDJ leave to sue. That denial is presently on appeal.

### The Instant Motion

That brings us to the instant motion. As indicated above, the Receiver now moves this Court to approve his account, cancel his undertaking and discharge both himself and his surety. Inasmuch as an appeal of this Court's denial of leave to sue the Receiver is presently pending, it would be inappropriate for this Court to grant such relief at this time. Consequently, these requests for relief are denied without prejudice to their renewal after the resolution of the appeal.

**6.** Inasmuch as the Receiver was appointed under New York law, the parties argued the motion thereunder. Under New York law, leave of the Court which appointed the receiver must be obtained prior to commencing suit against

### Commissions and Expenses

The law in New York is that a receiver is entitled to a *maximum* commission of 5% of "the total sum 'passing through the receiver's hands,'" *New York Bank for Savings v. Jamaica Towers West Associates*, 49 Misc.2d 230, 267 N.Y.S.2d 143, 145 (Sup.Ct. Queens County 1966) *quoting City Bank Farmers Trust Co. v. Emlu Engineering & Construction Corporation*, 254 A.D. 773, 4 N.Y.S.2d 763 (2d Dep't 1938); *Knickerbocker Federal Savings and Loan Association v. 531 East 14th St. Inc.*, 39 Misc.2d 23, 240 N.Y.S.2d 112 (Sup.Ct. Bronx County 1963); *Bowery Savings Bank v. Amsterdam Avenue Corp.*, 32 Misc.2d 459, 223 N.Y.S.2d 438 (Sup.Ct. N.Y. County 1961); *see* CPLR 8004(a) (McKinney 1981), plus his reasonable and necessary expenses, CPLR 8006 (McKinney 1981); *Siegel v. Bromanbro Realty Corp.*, 23 A.D.2d 634, 257 N.Y.S.2d 107 (1st Dep't 1965) (per curiam); *Beirne v. Hubel*, 20 A.D.2d 891, 248 N.Y.S.2d 939 (1st Dep't 1964) (per curiam). However, the general rule is that such commission, expenses and allowances are only to be paid out of funds in the receiver's hands at the termination of the receivership. CPLR 8004(b), on the other hand, is a codification of the exception to that rule which allows the court to impose such fees on the party who moved for his appointment under "special circumstances". *East Chatham Corp. v. Iacovone*, 25 A.D.2d 622, 267 N.Y.S.2d 839 (1st Dep't 1966) (per curiam), *appeal dismissed* 19 N.Y.2d 687, 225 N.E.2d 564, 278 N.Y.S.2d 876 (1967); *Benlian v. Vartabedian*, 96 Misc.2d 63, 409 N.Y.S.2d 956 (App.Term 1978) (per curiam). Typically, special circumstances are found where the receiver has taken property into his custody under an irregular or unauthorized appointment which thereby conferred upon him no right to charge this fund with any expenses. *Atlantic Trust Company v. Chapman*, 208 U.S. 360, 373–74, 28 S.Ct.

him. *Copeland v. Salomon*, 56 N.Y.2d 222, 451 N.Y.S.2d 682, 436 N.E.2d 1284 (N.Y. Ct.App. 1982). The purpose of the rule is to prevent the receiver from being subjected to unnecessary suits. *Id.* at col. 5.

406, 410, 52 L.Ed. 528 (1908). The classic illustration of this type of situation arises where the judgment under which the receiver was appointed is later reversed on appeal. In such circumstances, the case law states that the receiver has no right to charge the property received but must look to those who obtained his appointment for his fees. *Hernandez v. Brookdale Mills, Inc.*, 232 N.Y. 552, 134 N.E. 568, (1921) (per curiam); *Romano v. Giarrakopulus*, 142 N.Y.S.2d 48 (N.Y.C.Ct.1955).

 In the instant case, the Receiver was appointed under CPLR 5106 upon the motion of the debtor to enforce its judgment against PDJ. It was under this authority that he collected $32,150.34. However, as of the 26 May 1981 reversal by the New York Appellate Division of the underlying judgment and the concomitant vacatur of the order appointing him, he no longer had any right to charge his fees against this fund. Rather, his only right and duty was to file an accounting and petition the court that appointed him to award his fees as against the debtor. Therefore, although Manufacturer's Hanover's acceding to PDJ unauthorized demand for the funds in the Receiver's account was clearly contemptuous and possibly even a conversion,[7] inas-

much as the Receiver had no right to charge these funds, he states no claim for relief.

Based on the foregoing, the Court need go no further in this decision. However, in the interest of judicial economy it shall.

As should be clear from this opinion, it appears to this Court that it is the debtor which is liable for the Receiver's fees. Accordingly, had the Receiver not withdrawn his application to charge the debtor's estate, *see* note 2 *supra*, the Court would have awarded him $1,607.52 as a commission (5% of $32,150.34), $250.00 (premium on his undertaking) and $50.00 (for a license endorsement reflecting the Receiver's name as required by the State Liquor Authority) as reasonable and necessary expenses. *See* 11 U.S.C. § 543(c)(2). However, inasmuch as the Receiver is an attorney and authorization to employ counsel was in fact denied, *see* note 3 *supra*, the Receiver is entitled to no compensation beyond these amounts. CPLR 5106, 6401(b) (McKinney 1978, 1980); *Capone v. Matteo Realty Corporation*, 237 A.D. 322, 261 N.Y.S. 178 (2d Dep't 1932) (per curiam); *Husqvarna Vapenfabriks Aktiebolag v. R.P. Hussey & Co.*, 211 A.D. 88, 206 N.Y.S. 873 (1st Dep't 1924); *Pack v. Loremady Realty Corp.*, 77 Misc.2d 856, 357

---

**7.** The receiver is an officer of the court and the property paid into his hands is held in *custodia legis*. *Atlantic Trust Company v. Chapman*, 208 U.S. 360, 371, 28 S.Ct. 406, 409, 52 L.Ed. 528 (1908); *Copeland v. Salomon*, N.Y.L.J. 14 June 1982 at 23, col. 3, 5, 56 N.Y.2d 222, ——, 451 N.Y.S.2d 682, 436 N.E.2d 1284 (N.Y.Ct. App. 20 May 1982). Consequently, notwithstanding the vacatur of the order of his appointment, Manufacturer's Hanover was not authorized to release the funds in his account absent an order obtained on notice directing payment to a specified person. CPLR 2602, 2607 (McKinney 1974 & Supp. 1981–1982); *World Steel Products Corp. v. Ogden Gardens, Inc.*, 120 N.Y.S.2d 553 (Sup.Ct.West.County 1953).

The purpose of [these statutes] is to prevent a removal of property paid into court from being surrendered from its custody upon unlawful claims.

*In re Godfrey*, 46 Misc.2d 452, 259 N.Y.S.2d 953, 957 (Sup.Ct. Nassau County 1965) (citation omitted).

As of the May 26 reversal by the Appellate Division, title to both the restaurant and the

Receiver's funds was in dispute. Upon his appointment as Trustee, Mr. Barr's position was that notwithstanding that reversal, inasmuch as no stay had been obtained pending the appeal and that title to the restaurant had properly passed to the debtor in the interim, title was still in the debtor. *A fortiori* the consideration paid therefor belonged to PDJ. Accordingly, the Trustee took no action against PDJ or Manufacturer's Hanover. If on the other hand one accepted PDJ's argument that title to the restaurant vested in it upon the Appellate Division's reversal, it follows that their seizure of the debtor's payments was a conversion.

All of these issues were effectively mooted, however, by the stipulation entered into between the Trustee, PDJ and PDJ's principals, approved by this Court and affirmed on appeal, wherein PDJ ratified the debtor's title to the restaurant and both sides released each other from liability. *See Nassau-Mineola Restaurant, Inc. v. Barr (In re Studio # 54 Disco, Inc.)*, No. CV 81–3140, Slip op. at 12 (E.D.N.Y. 1 March 1982).

N.Y.S.2d 344 (App.Term 2d Dep't 1974); *Romano v. Giarrakopulus,* 142 N.Y.S.2d 48 (N.Y.C.Ct.1955); *First National Bank v. Milbauer,* 165 Misc. 643, 1 N.Y.S.2d 317 (N.Y.C.Ct.1937).

Accordingly, the Receiver's commissions and fees are fixed at *no more than* $1,907.52 and he is granted leave to make an application for the allowance of such amount from the estate on notice to the Trustee who is of course not bound by this opinion and consequently free to object to the allowance or classification of this amount on any grounds.

### Conclusion

The Receiver's motion to have his account approved, to cancel his undertaking and to discharge himself and his surety is denied without prejudice to its renewal after the resolution of the pending appeal of this Court's denial of leave to PDJ to sue the Receiver; the Receiver's motion to fix his commissions and fees is granted to the extent that they are fixed at no more than $1,907.52; the Receiver's motion to impose liability therefor on PDJ or Manufacturer's Hanover is denied; the Receiver's motion to hold the debtor's estate liable therefor is deemed withdrawn with leave to renew under the terms stated in this opinion.

So Ordered.