■ INDEPENDENCE SAVINGS BANK, Formerly Known as SOUTH BROOKLYN SAVINGS BANK, Plaintiff, v TRIZ REALTY CORP. et al., Defendants. DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, Appellant; JOHN BROWN, Respondent. — In a foreclosure action, the Department of Housing Preservation and Development appeals, as limited by its brief, from so much of an order of the Supreme Court, Kings County (Kartell, J.), dated April 19, 1982, as granted the motion of receiver John Brown to enjoin it from proceeding in the Civil Court of the City of New York against the receiver for failing to supply heat and hot water at the subject premises. ¶ Order reversed, insofar as appealed from, without costs or disbursements, and motion denied without prejudice to renewal if, within 30 days after service upon the Department of Housing Preservation and Development of a copy of the order to be made hereon, with notice of entry, the latter fails to move in the appointing court for permission to proceed in the Civil Court of the City of New York. ¶ In April, 1981, John Brown was appointed by the Supreme Court, Kings County, as receiver with respect to properties located at 1575, 1581 and 1589 President Street, Brooklyn, pending a mortgage foreclosure action. In November of the same year, the Department of Housing Preservation and Development (hereinafter HPD) commenced proceedings in the Civil Court of the City of New York against Triz Realty Corp., the owner of the properties, and Nachum J. Nodell, the registered managing agent, because of certain alleged building violations. HPD apparently then learned that John Brown had been appointed receiver. By order to show cause, dated January 18, 1982, HPD brought a proceeding in the same court against John Brown, seeking an order directing Brown to provide heat and hot water to the apartment building located at 1575 President Street. By notice of motion dated January 21, 1982, HPD moved, in the proceedings against Triz Realty Corp. and Nachum J. Nodell, *inter alia,* to add John Brown as a party and to fine him $500 "for failure to register as owner or managing agent". ¶ Thereafter, John Brown moved, by order to show cause, to enjoin HPD "from conducting a proceeding in the Civil Court, County of Kings, seeking an order whereby heat and hot water is to be supplied at the premises". He argued that the proceeding was improper because he had not been sued "in his capacity as a receiver * * * nor did they obtain leave to sue from the Supreme Court before proceeding". HPD cross-moved for, among other things, an order allowing it to intervene in the foreclosure action. It argued that Brown was correctly named in the proceeding as "owner" of the subject premises, since the legal definition of that term includes "receiver". It further argued that permission to sue Brown was not needed from the appointing court, since "he is being sued to compel compliance with housing code standards". ¶ Special Term accepted the receiver's contention that permission was needed from the appointing court, and enjoined HPD "from commencing or prosecuting any proceeding in the Civil Court of the City of New York, for heat and hot water at premises 1575, 1581 and 1589 President Street, Brooklyn, New York". The court also denied HPD's cross motion. As limited by its brief, HPD appeals from that portion of the order which granted the receiver's motion. ¶ It is true that generally a receiver may not sue or be sued without the express permission of the court that appointed him (*Kilarjian v Kilarjian,* 32 AD2d 542). This rule "was devised in order to protect the receiver and the estate against the harassment and expense of possibly unnecessary litigation and to preserve the estate in the hands of the receiver for the benefit of all creditors equally" (*Copeland v Salomon,* 56 NY2d 222, 228). Focusing on this rationale, we conclude that an action or proceeding to enforce a housing code comes within the rule. A suit which seeks correction of housing violations affects the *res* insofar as the costs of litigation, the expense of remedying any violations, and the payment of any penalties would presumably have to be

borne by the receivership administration, the money coming from receivership funds or out of the property itself. We part company with the decision in *Metropolitan Sav. Bank v Residual Realties* (102 Misc 2d 1105) to the extent that it stands for a different result. *Copeland v Salomon (supra)* provides a persuasive comparison. There, one of the plaintiffs was injured while using the common stairway of a building which was in foreclosure. Suit was commenced against the receiver. The Court of Appeals, noting that such damages "are part of the expenses of [the receivership] administration", held that permission from the appointing court was necessary in order to sue the receiver in tort (*Copeland v Salomon, supra,* p 232; see *Copeland v Salomon,* 103 Misc 2d 611). ¶ HPD argues that since the rule requiring leave of the appointing court to sue a receiver is court created, it may be superseded by statute. It maintains that there are such statutory modifications of the rule, namely subdivision 44 of section 4 of the Multiple Dwelling Law and subdivision 45 of section D26-1.07 of the Administrative Code of the City of New York, which include in the definition of the term "owner" that of "receiver", and CCA 203 (subds [k], [o]) providing jurisdiction in the Civil Court for actions or proceedings to enforce housing standards found in the Multiple Dwelling Law and Administrative Code. ¶ It is true that the rule, that permission from the appointing court is generally required before suit is brought against a receiver, is judicially created (*Copeland v Salomon,* 56 NY2d 222, 227-228, *supra*). We also do not quarrel with the proposition that the Legislature could modify it if it so chose. However, the rule is firmly ensconced in our judicial tradition. Without a clear indication from the Legislature that it intends to abrogate the rule in a specific case, we would be wise not to ignore it (see *Matter of McGuinness v New York State Off. of Ct. Admin.,* 96 AD2d 561, 563). While it is clear from the statutes and ordinances cited by HPD that the Civil Court has jurisdiction to hear a case brought against a receiver for housing violations, there is no indication that permission from the appointing court is not needed as a condition precedent. We therefore conclude, applying the rule favoring such permission, that leave is necessary. Special Term decided this case without the benefit of the Court of Appeals opinion in *Copeland v Salomon (supra)*. There, the court held that permission from the appointing court was a condition precedent to suit and not a jurisdictional predicate without which a suit must be dismissed. Further, the Court of Appeals noted that, dependent on the circumstances of each situation, there are three possible alternatives that could be followed where a suit against a receiver is commenced without permission from the appointing court: (1) "the court in which the action had been begun was free to consider it regular and permit it to continue subject to the later order of the appointing court"; (2) the action may be stayed "pending an application to the appointing court for leave *nunc pro tunc",* or (3) the action could be dismissed "without prejudice to recommencement after such leave had been obtained" (*Copeland v Salomon, supra,* p 230). ¶ Taking into account the obvious and important public need of having buildings in compliance with housing standards, particularly in reference to such items as heat and hot water, we are of the view that *the proper resolution in this case* would be to let the matter or matters proceed in the Civil Court, subject to a grant of permission from the Supreme Court. A motion may be brought by HPD, in the foreclosure proceeding, by notice of motion or an order to show cause, to obtain leave to sue the receiver. As Chief Judge Cardozo once noted in reference to a foreclosure action, "a stranger [such as HPD] may intervene and will be heard *pro interesse suo* when his interests in the subject-matter of a receivership are affected to his prejudice by the acts of the receiver" (*Klasko Fin. Corp. v Belleaire Hotel Corp.,* 257 NY 1, 4). While HPD did cross-move to intervene, it was not for the purpose of seeking permission to sue in Civil Court. HPD has

not yet sought such permission because it has been of the view that it was unnecessary. Special Term made its determination based on a jurisdiction concept, without otherwise addressing the propriety, in the context of this foreclosure action, of HPD's proceeding against the receiver in Civil Court. Inasmuch as Special Term did not consider the merits of an application for leave, we think it appropriate to require HPD to apply to the appointing court. The receiver's motion should be denied, with leave to renew if HPD fails to apply for leave from the Supreme Court within the time set forth herein. ¶ Another point deserves comment and that is in reference to the receiver's terse statement in the factual portion of his brief that the premises in question have been sold in a foreclosure sale, that he has been divested of possession, and that therefore "the proceeding in either forum [is] Moot". Even if the mootness doctrine had otherwise been shown to be applicable, we would, nonetheless, reach the merits of this case since it involves an important legal question which has not been ruled on, to our knowledge, by an appellate court, and because that question could typically evade review if the mootness doctrine were strictly adhered to (see *Matter of Hearst Corp. v Clyne*, 50 NY2d 707). It can be expected that generally a foreclosure sale would be held prior to appellate resolution of an issue involving suit against a receiver for housing violations. In any event, the record does not confirm the receiver's allegations. There is a statement that a sale was scheduled for March 2, 1982. However, we do not know whether the sale actually occurred. Further, the record does not indicate whether or not there is a final judgment in the foreclosure action, or whether, even if there is a final judgment, the receivership has been discharged (see CPLR 6401, subd [c]). We, therefore, are unable to conclude that the proceeding to direct the receiver to provide heat and hot water to the premises in question is academic. ¶ Finally, we note that, in the circumstances, the failure to name John Brown "as receiver", even if it be improper, is simply an irregularity which can be disregarded pursuant to CPLR 2001 and 3026 (*Copeland v Salomon*, 56 NY2d 222, 232, *supra*). Gibbons, J. P., Bracken, Brown and Niehoff, JJ., concur.