OPINION OF THE COURT
Theodore Diamond, J.
3. In tenant’s special proceeding to appoint a 7-A administrator (RPAPL art 7-A) for premises 256 South 4th Street, Brooklyn, the respondents appearing are the Department of Housing Preservation and Development of the City of New York (HPD; which joins in the application), and Portelli, identified as mortgagee.
5. Measuring the evidence against the standards identified, RPAPL 770 (1); 772 (1), I am required to render judgment to petitioners. Conditions in the building are outrageous. There are almost 200 violations; compared with 76 in Maresca v 167 Bleecker (121 Misc 2d 846 [Civ Ct 1983]) and 50 in Salzman v Brown (67 Misc 2d 101 [Civ Ct 1971]), where administrators *543 were appointed. As in Oyola v Combo Creditors (64 Misc 2d 727, 729 [Civ Ct 1970]), "No one seems to be managing this property * * * heating it, repairing it, renting it, or even collecting apartment rents.”
6. There is appellate authority upholding a trial court’s decision that conditions may be so dangerous to life, health and safety as to render the building uninhabitable, and appointment of an administrator futile (McGovern v 310 Riverside Corp., 49 AD2d 949 [2d Dept 1975]), a point made in the Portelli memorandum. Thus, mortgagee does not deny the existence of these terrible conditions. But this defense was not made in Portelli’s answer and I find nothing in the record to support it. Whether it makes sense to provide taxpayer’s money is another question. Emergency repair funds have been provided; HPD indorses appointment of an administrator; it is suggested that an HPD loan may be arranged, and such funds may flow liberally in an election year. Besides, the McGovern situation was different: municipal authorities were trying to enforce their vacate orders while tenants wanted an administrator. This theory was knocked in Department of Hous. Preservation & Dev. v St. Thomas Equities Corp. (128 Misc 2d 645, 650 [App Term, 2d Dept]); "The so-called 'economic viability’ of a building may not be used as a device, nor raised as a standard by which a landlord is permitted to escape his 'nonwaivable duty’ ” where landlord had made conditions worse.
7. What issues remain? Although Portelli might have utilized a preanswer motion, she elected to answer with affirmative defenses, paragraphs 2-4A: a mortgage foreclosure receiver was appointed April 4, 1985 (before this special proceeding commenced); tenants have neither applied for leave of Supreme Court to institute the proceeding nor received it; receiver was not made a party; receiver was not served; and Civil Court thus lacks jurisdiction. No statutory authority is provided, although the general propositions are supported by precedents; albeit precedents undergoing change because they have been used "inexactly” (Copeland v Salomon, 56 NY2d 222, 227 [1982]), drawing the distinction between power "to adjudicate * * * a category of cases” and "absence of a condition precedent requiring] dismissal”. This court has subject matter jurisdiction (CCA 110 [a] [5]).
10. The April 4, 1985 Supreme Court order does not, by its terms, require the receiver to be named or served in a 7-A proceeding, or that leave of the court be requested prior to *544 commencing such a proceeding. While there is authority that Supreme Court first approve an action brought against a receiver, this 7-A proceeding was not brought against the receiver (infra).
11. Courts have allowed a receiver to be sued in many circumstances when Supreme Court approval had not been granted (Copeland v Salomon, supra, and cases cited therein). Appellate Division had ruled otherwise, Justice Titone concurring there only on constraint (81 AD2d 824). In Metropolitan Sav. Bank v Residual Realties (102 Misc 2d 1105 [Sup Ct 1980]), a receiver sought to enjoin the New York City Environmental Control Board from enforcing the law. Justice Composto concluded that the general rule does not apply to every situation. "The health and welfare of the community bars any consideration or nicety of distinction of special classes of violators” (p 1107).
12. Did the receiver have to be named in the petition? How could the receiver have been named, when he was appointed (Apr. 4, 1985) after the 7-A petition was signed and verified by the tenants (Apr. 3, 1985)? More significant, there is no requirement in article 7-A, and particularly in RPAPL 771 and 772 which deal with the commencement and contents of the petition, that the receiver or anyone else be named.
13. Did the receiver have to be served? Nothing in the provisions on service, RPAPL 771 (5), says that the receiver must be served. It provides for service on the owner "last registered” with HPD, mortgagees and lienors of record, and on nonpetitioning tenants. Since the last registered managing agent (Santos) is deceased, it can be served on the last registered owner by affixation at the building (RPAPL 771 [5] [b]). The unchallenged and impressive affidavit of service by Mr. Pacheco of Brooklyn Legal Services makes it clear that proper services was made on owning corporation, managing agent, and Portelli. For discussion of service requirements, see, Eversley v Ulkan Realty Corp. (70 Misc 2d 153). Even if the receiver should have been served as an owner (RPAPL 781), he wasn’t registered with HPD. According to the HPD printout, a prior managing agent was Wolf Genuth of 260 Broadway; but one registration showed the address of South Williamsburg at 260 Broadway, and the opposite side says that Anne Gross, secretary of the corporation, had her business and home address at 260 Broadway, the same home address as Wolf Genuth (supra).
*545 14. The court credits the affirmation of petitioner’s attorney (July 17, 1985), which is uncontroverted, that a copy of the petition was delivered to receiver Gibbs, and that he appeared in Housing Court on May 15 and return dates.
If Gibbs wanted to appear on July 17 and defend, or make motions to dismiss, he could have done so, but did not. Neither, so far as we know, has he asked Supreme Court for an order taking jurisdiction of this special proceeding. Thus, even if he made the argument, rather than Portelli, Gibbs can be deemed to have waived it (Cole v Westlong Investors Corp., 65 Misc 2d 114, 117 [Civ Ct 1970]).
15. Notwithstanding prior authority to the contrary (Dime Sav. Bank v Jay Realty Co., NYLJ, May 19, 1976, p 8, col 2 [Sup Ct]; United Mut. Sav. Bank v Breukelen Realty Corp., NYLJ, Dec. 28, 1977, p 6, col 2 [Sup Ct]), of which the former preferred the receiver, and the latter the administrator, there is no logical reason why a receiver and 7-A administrator cannot coexist; in fact, it is specifically contemplated by RPAPL 778 (5) (as added by L 1981, ch 769). The thoughtful memorandum by Senator Halperin (1981 NY Legis Ann, at 413) is worth consideration, "this bill * * * would clarify the legislature’s intent that an administrator * * * shall continue to perform his duties even though a mortgagee sought the appointment of a receiver in an action to foreclose a mortgage * * * several mortgagees have attempted to avoid RPAPL, Article 7A by instituting foreclosure proceedings * * * They then argue that, because the receiver is appointed by the Supreme Court, and because the administrator is appointed by the lower court, the administrator no longer has a right to continue serving at the premises. This was never the legislature’s intention * * * Several sections in Article 7A indicate that no special rights should be given to a receiver * * * Passage of this bill would not prevent any mortgagee from obtaining the appointment of a receiver. However, once a receiver is appointed, his rights would be the same as the owner at the time of his appointment, that is, to receive any surplus of any funds held by the administrator.”
16. Given the existence of a receiver, albeit quiescent and absent on July 17, should a 7-A administrator be appointed? While the court has some discretion before utilizing such a traumatic remedy, the answer surely must be yes. The tenants are living in a slum. Portelli’s interest compared to theirs is inconsequential. Even if there was consideration for the mort *546 gage assigned to her, she knew or should have known of the building conditions. If she visited the premises, she surely saw them.
The purpose of a 7-A administrator is to correct violations and eliminate bad conditions (RPAPL 776 [b]; Cole v Westlong Investors Corp., supra; Smith v Surrey Hous. Dev. Fund Co., 86 Misc 2d 951 [Rockland County Ct 1976]; Salzman v Brown, supra) and increase dwelling units (Oyola v Combo Creditors, supra).
The Supreme Court order of April 4, 1985 appointed Gibbs receiver "for the benefit of the plaintiff’ (Portelli). While Gibbs is authorized to keep the premises in repair, he is not required to make repairs, correct violations, or comply with housing codes. He can spend money on taxes, and payments to prior first mortgagees. Many cases, where there were 7-A administrators, demonstrate how receivers tried to get and use funds for purposes other than repairs (Kahn v Riverside Syndicate, 59 Misc 2d 238 [Civ Ct 1969], affd App Term, revd on other grounds 34 AD2d 515 [1st Dept 1970], lv dismissed 27 NY2d 724 [1970], "Nowhere does the Legislature provide that a court appointed administrator shall pay the carrying charges for the offending owner violating the law” [p 239]; Pack v Loremady Realty Corp., 65 Misc 2d 801, 804 [Civ Ct 1971], "the will of the Legislature to effect judicial policing of such depressed premises is not to be readily thwarted nor is the increasing of the equities of defaulting owners or mortgagees to be permitted”). In Brynwell Mgt. Corp. v Mill Riv. Realty (112 Misc 2d 838, 840 [Civ Ct 1981]), in which Harry A. Roth was attorney for Brynwell, the court pointed out that it is the duty of the 7-A administrator "to carry out the public policy of the State of New York” and, as between an administrator and receiver in foreclosure, "the receiver must yield * * * The administrator has the duty to protect the property and its occupants; and the commercial interests of the parties to the foreclosure litigation may not supersede that duty.” Actually that analysis may no longer be correct generally, but it is the situation in this case. Why? RPAPL 1325 deals with receivers in foreclosure actions, identifying court orders about use of rents. It was amended in 1983 (L 1983, ch 689, eff July 26, 1983) by adding a new subdivision (3), stating that any order appointing a receiver for rents from a multiple dwelling in New York City "shall provide” (a) that the receiver register with any department as required by law, and (b) that in expending money, the receiver shall give priority "to the *547 correction of immediately hazardous and hazardous violations of housing maintenance laws” (RPAPL 1325 [3] [b]). The purpose of the legislation submitted by the Mayor (1983 NY Legis Ann, at 303) was "no legal stipulation exists mandating the receiver to take corrective action against immediately hazardous or hazardous violations. As a result, tenants in occupancy many times face dangerous health and safety situations. This bill would afford court appointed receivers with proper guidance during the mortgage foreclosure period.”
Such provisions were not included in the April 4, 1985 order appointing Gibbs, most likely because it was not in the order submitted by Portelli’s attorneys. Unfortunately, the new language in RPAPL 1325 is not otherwise enforceable; if not in the order, it’s not binding on the receiver.
When there is an administrator, funds available cannot be forcibly tapped to pay the past utility bills (Smith v Surrey Hous. Dev. Fund Co., supra); city taxes (Cole v Westlong Investors Corp., supra); payments for past repairs (supra); taxes and mortgage payments (Kahn v Riverside Syndicate, supra). Pack v Loremady Realty Corp. (supra) allowed the administrator to use his fire insurance proceeds for repair, protecting them from claims by landlord and mortgagee. Of course, if the mortgagee is collecting on his fire coverage, the administrator cannot claim the money (Mercer v 944 Marcy Ave. Holding Corp., 92 Misc 2d 122 [Civ Ct 1977]).
17. The tenants were not named in the mortgage foreclosure proceeding. The court order directed them to pay rents to the receiver. The named defendants (not including the tenants) are enjoined from collecting the rents, and the tenants are enjoined from paying any rents to the named defendants. However, the order does not appear to prohibit them from paying their rent to a tenant association; and the warranty of habitability (Real Property Law § 235-b) can be used by the tenants against a receiver (Yanowitz v Sanchez, NYLJ, May 5, 1983, p 11, col 1 [App Term, 1st Dept]). In fact, since he isn’t registered with HPD, Gibbs cannot collect rents through a summary proceeding (Multiple Dwelling Law § 325 [2]).
Introduced as Portelli’s exhibit A is an April 8, 1985 letter to the tenants, on stationery of Gordon, Jackson and Simon, 225 Broadway. It includes language that rent checks are to be mailed to Richard Gibbs at P.O. Box 459, 200-17 Linden Blvd., St. Albans, Queens, 11412. The Supreme Court order of April 4, 1985 identifies Gibbs’ address as 200-17 Linden Blvd., not a *548 post-office box. This is a general problem. Both HPD and Civil Court allow managing agents to use post-office boxes as addresses, even though not allowed by law (Administrative Code of City of New York § D26-41.03 [a] [2]).
The April 8, 1985 letter, which identifies Harry A. Roth as counsel to the firm, refers to the Supreme Court order, and says that all rent "shall be paid to Mr. Richard Gibbs at the above address and to no other party.” The Judge didn’t quite say that. His order said that the tenants should not pay rents to the named "defendants”. The order would not prohibit tenants from paying rent to a tenants’ committee or a 7-A administrator; the lawyer’s letter suggests that it does, by using the inexplicitly defined word, "party.”
Under the circumstances, it is reasonable to conclude that receiver Gibbs isn’t going to be able to do anything for these tenants.
18. Investors Ins. Co. v Gorelick (100 Misc 2d 87 [Civ Ct 1979], revd 108 Misc 2d 353 [App Term, 1st Dept 1981]) was decided before Copeland v Salomon (supra). It involved a suit directly against a receiver for unpaid insurance premiums. Civil Court ruled that failure to seek leave of Supreme Court was nonjurisdictional but stayed the proceedings; Appellate Term vacated the stay because the receiver had no authority to procure liability insurance.
19. Independent Sav. Bank v Triz Realty Corp. (100 AD2d 613 [2d Dept 1984]) would be a closer case, assuming: (1) it is necessary to get leave to commence a 7-A proceeding against a receiver not yet appointed when the petition is verified, and (2) mortgagee can use the defense. Even then, the posture of the case is very different. It was an action directly against a receiver to fine him $500. It did not involve a 7-A administrator. HPD also sought an order in Civil Court directing the Supreme Court-appointed receiver to supply heat and hot water as required by law. The receiver moved in Supreme Court to enjoin HPD from proceeding in Civil Court, and a Supreme Court Justice enjoined the department. Appellate Division reversed. Although it did require HPD to move in Supreme Court for permission to proceed in Civil Court, Second Department noted, "the obvious and important public need of having buildings in compliance with housing standards” (p 614).
20. Wolf Genuth was previously connected with this building. Genuth v First Div. Ave. Realty Corp. (88 Misc 2d 586 *549 [Sup Ct 1976]) involved a foreclosure action by Genuth where a 7-A administrator had already been appointed. Genuth succeeded in having a receiver appointed by ex parte order, under circumstances where "the court was not fully apprised of the circumstances surrounding the subject premises” (p 587). The court pointed out that Genuth was not only the plaintiff mortgagee, but owned a controlling interest in the corporation, and that the 7-A administrator was making repairs. The motion to vacate appointment of the receiver was granted.
21. There is some evidence, after reading all the cases, that slumlords use the mortgage foreclosure gambit to undermine the legislative effect of article 7-A and housing codes. They delay matters with arguments about receivers and Supreme Court orders. In Copeland v Salomon (supra, p 231), the Court of Appeals discussed bad conditions in premises, and how receivers were made liable for their negligence. This encouraged receivers to carry liability insurance, and to make repairs. It cited a comprehensive study of the problem in 1936, by the Law Revision Commission. It might well serve the public interest for the Law Revision Commission to review this issue once again.
[Portions of opinion omitted for purposes of publication.]