OPINION OF THE COURT
Irad S. Ingraham, J.
Petitioner in the instant show cause application was re *689 tained by a court-appointed receiver to manage property pending resolution of a foreclosure action thereon. Upon a showing that petitioner had improperly diverted a sum of money, the court directed the receiver to apply for contempt sanctions upon petitioner’s failure to pay said sum within 30 days, and to enter a judgment in that amount against petitioner. This application requests modification of that order, by deleting the requirement for contempt sanctions upon petitioner’s failure to make this payment.
Petitioner appeared by counsel for oral argument on November 30. The receiver submitted an affidavit opposing modification.
FINDINGS OF FACT
Petitioner Peter J. Tutino is the president and chief executive officer of the primary defendant, PJT Enterprises, Inc. He was also employed by the receiver in this mortgage foreclosure to manage the property during the pendency of the action.
On May 23, 1990, petitioner appeared as a witness before this court, pursuant to subpoena, to give testimony regarding questionable disbursements of funds during the period of his service to the receiver. When questioned under oath regarding these disbursements petitioner refused to answer, invoking his Fifth Amendment privilege. The hearing was recessed until June 29, 1990, to allow for the examination of books and records obtained from petitioner pursuant to subpoena and warrant. On that date the court heard the testimony of a certified public accountant concerning the disbursements and accounts receivable. The hearing was reconvened on September 17, 1990. At that time the attorneys for all interested parties, including petitioner, had the opportunity to examine this expert witness concerning matters set forth in the final report of the receiver. This report indicated that the sum of $69,138 had been improperly diverted from the receiver’s account by or at the direction of petitioner.
By order dated September 21, 1990, petitioner was then directed to pay this sum into the court within 30 days of service. Upon his failure to do so, the receiver was directed to enter a judgment for this sum against him, and to apply for contempt sanctions. Petitioner now requests that this order be modified to delete the direction for a contempt application. He argues that the court lacks jurisdiction for the order, as *690 petitioner was not a party to the action but merely appeared as a witness. Further, he states that he does not have the "property in possession,” and is therefore unable to comply, as the property has been paid to the wrong creditors, and petitioner personally is bankrupt and unable to raise the funds. At oral argument petitioner maintains that he can demonstrate justification for various payments he made, to reduce the sum stated in the final report. He requests another opportunity to present this evidence should his request for modification be otherwise denied.
The order was suspended pending this determination.
CONCLUSIONS OF LAW
The issue of jurisdiction first entails an examination of the contempt power itself. The court’s power to punish for civil contempt is codified in Judiciary Law § 753. This section reads in part as follows:
"A court of record has power to punish * * * a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in any of the following cases:
"1. An attorney, counsellor, clerk, sheriff, coroner, or other person, in any manner duly selected or appointed to perform a judicial or ministerial service, for a misbehavior in his office or trust, or for a wilful neglect or violation of duty therein; or for disobedience to a lawful mandate of the court, or of a judge thereof * * *.
"3. A party to the action or special proceeding, an attorney, counsellor, or other person, for the non-payment of a sum of money, ordered or adjudged by the court to be paid, in a case where by law execution can not be awarded for the collection of such sum except as otherwise specifically provided by the civil practice law and rules; or for any other disobedience to a lawful mandate of the court * * *.
"8. In any other case * * * to enforce a civil remedy of a party to an action or special proceeding in that court, or to protect the right of a party.” (Emphasis added.)
Petitioner fits within these provisions. The record in this matter reveals that funds were apparently misappropriated by petitioner, either willfully or negligently. At the time this wrongful allocation of funds occurred, petitioner was performing a ministerial service for the court. The return of this sum *691 has now been duly ordered, so as to avoid the impairment of plaintiff’s rights in this proceeding. Plaintiff would not otherwise be able to recover this sum by employing the usual procedures of execution against the petitioner.
As demonstrated by the statutory inclusion of paragraph (8) of Judiciary Law § 753 (A), the contempt power of the court is broad, designed to be used in cases such as this to protect the rights and remedies of litigants.
This case falls squarely within the statutory limits, as shown above. Nonetheless, it is noted parenthetically that the Appellate Division, Second Department, has held that a court invoking the power to punish for civil contempt may "look beyond the specific provisions of the statute and resort to its inherent common-law contempt power.” (Gabrelian v Gabrelian, 108 AD2d 445, 451 [2d Dept 1985].) The appellate court reached its determination in this case based upon historical analysis and a survey of cases in which the "inherent powers doctrine” has been applied or rejected. This doctrine establishes that "a court has all powers reasonably required to enable [it] to perform efficiently its judicial functions, to protect its dignity, independence and integrity, and to make its lawful actions effective.” (Supra, at 448, citing Carrigan, Inherent Powers of the Courts [National Coll of State Judiciary], Reno, Nev [1973].)
It is axiomatic that the receiver "acts as the hand of the court.” (Copeland v Salomon, 56 NY2d 222, 232 [1982].)
As an agent of the receiver, petitioner is merely one step removed. Surely the court has jurisdiction over its own agents. To hold otherwise would render the court’s function in this receivership ineffective.
The court may employ the contempt power to enforce actions by fiduciaries, e.g., to compel a trustee to file an accounting. (Kelly v Sassower, 78 AD2d 502 [1st Dept 1980]; Matter of Drimmer v Drimmer, 97 AD2d 792 [2d Dept 1983].)
It is also settled law that a fiduciary may be held liable for improper management of assets, whether resulting from willful acts or gross negligence. (Matter of Rothko, 84 Misc 2d 830 [1975].)
In the above-cited case, the executors of an estate were fined in contempt for transferring estate assets in violation of a court order. In the instant case, the terms of the order of appointment of the receiver were clear, the purpose being to preserve and maintain the assets for plaintiff’s benefit. It *692 cannot reasonably be asserted that petitioner was unaware of this order, or of his fiduciary obligations thereunder. Authority abounds that a nonparty may be found in contempt for violation of a court order of which they had knowledge, provided a relationship to the parties is demonstrated. (State Univ. v Denton, 35 AD2d 176 [4th Dept 1970]; Power Auth. v Moeller, 57 AD2d 380 [3d Dept 1977]; Annotation, Violation of State Court Order by One Other Than Party as Contempt, 7 ALR4th 893.)
While these cases are distinguishable as they involve court-ordered injunctions, an order of receivership imposes reasonably similar requirements. The same legal principle applies. In this case, petitioner is intimately related to the subject matter of the action in several ways — he appeared as a witness before the court, he is an officer of the defendant corporation, and he assumed the role of "asset manager” during the receivership.
Based on the analysis above, given the potential prejudice to plaintiff and the role and duties assumed by petitioner in relation to the court, application of the contempt power is proper in this matter.
In this reasoning lies the court’s power to issue an effective order in the first instance. It is noted, however, that "jurisdiction”, in its more limited meaning, will be obtained in the usual method, by serving the receiver’s application for sanctions upon petitioner. (CPLR 304.)
Petitioner will be afforded all the protections of due process, and given an opportunity to demonstrate any defense, justification or excuse for his misconduct at the hearing upon the contempt application. Therefore, the argument that he is unable to comply with the order is premature at this time. There will be an opportunity to present evidence of this alleged inability as a defense at the future hearing, should that stage be reached.
Accordingly, it is determined that the court has jurisdiction of this matter. Petitioner’s request for modification is denied. The suspension of the prior order is terminated. Upon the filing of an application for contempt by the receiver, a hearing will be scheduled forthwith, allowing petitioner to present evidence regarding the amount due and other potential defenses.