■ CONSTELLATION BANK, N. A., Plaintiff, v BINGHAMTON PLAZA, INC., Appellant, et al., Defendants. WICK REALTY, INC., Respondent. [653 NYS2d 208] —White, J. Appeal from an order of the Supreme Court (Monserrate, J.), entered November 6, 1995 in Broome County, which, *inter alia*, settled the final accounting of Wick Realty, Inc. as receiver and fixed the amount of the commission.

The focus of this appeal is the final accounting of the receiver appointed in this mortgage foreclosure action involving a shopping center in the City of Binghamton, Broome County. Still in dispute is Supreme Court's allowance of the receiver's payment of $255,000 to plaintiff, the mortgagee, and a $85,095 maintenance fee, as well as its award of the full statutory commission to the receiver. For the reasons that follow, with one exception, we concur with Supreme Court's determination.

A receiver acts as the hand of the court with only those powers provided in the appointment order and may perform only those acts expressly authorized therein (*see*, *Security Pac. Mtge. & Real Estate Servs. v Republic of Philippines*, 962 F2d 204, 211; *Copeland v Salomon*, 56 NY2d 222, 232; *see also*, 22 NYCRR 202.52 [b]). It is undisputed that the receiver here, Wick Realty, Inc., ran afoul of these precepts since, while the order of the appointment specified that court approval would be required for the employment of an agent and for expenditures, other than certain carrying charges and operational expenses, Wick never sought nor obtained such approval, acting instead in accordance with a management agreement it had negotiated with plaintiff that it mistakenly assumed had been approved by Supreme Court. The absence of judicial approval, however, did not preclude Supreme Court, in the exercise of its

discretion, from approving Wick's unauthorized expenses (*see*, *Litho Fund Equities v Alley Spring Apts. Corp.*, 94 AD2d 13, 17; *see also*, 8 Weinstein-Korn-Miller, NY Civ Prac ¶ 8004.04).

With respect to the payment to plaintiff, about three months after Wick's appointment plaintiff approached Wick and inquired when it could expect payment from the excess funds in Wick's account on the $1.5 million mortgage given it by defendant Binghamton Plaza, Inc. (hereinafter defendant). Wick, albeit improperly, contacted plaintiff's attorneys who advised that Wick could make payments of interest since said payments would be considered operational expenses. Acting on this advice, Wick made a $180,000 payment of interest, advising defendant which raised no objection. A subsequent payment of $75,000 was made in August 1994. Again, defendant was notified but did not object. Interestingly, after defendant's sole shareholder repurchased the mortgage, he acquiesced in the payment, without court approval, of $90,000 in interest to Starbare III Partners, L.P., the entity that had purchased the mortgage from plaintiff. We further note that the mortgage directs the receiver, after payment of all necessary charges and expenses, to apply the funds on account of the indebtedness secured by the mortgage.

Defendant's present objection is further diminished by its reference in prior motions in this action to the interest payments as evidence that the mortgage debt was being reduced, thereby making it unnecessary to approve Wick's application for permission to enter into long-term leases. Having once used the challenged payments approvingly, defendant cannot now disapprove of them (*see*, *Shepardson v Town of Schodack*, 195 AD2d 630, 632, *affd* 83 NY2d 894). In light of these circumstances, Supreme Court did not abuse its discretion in allowing these payments, particularly since they inured to defendant's benefit and were in accord with the general functions of a receiver (*see*, *Holmes v Gravenhorst*, 263 NY 148, 152). We have not considered the impact of RPAPL 1325 (2) upon these payments as that issue was not raised before Supreme Court (*see*, *Agostino v Monticello Greenhouses*, 166 AD2d 471, 472).

We would be inclined to disallow the $60,084.90 salary expense for the onsite manager hired by Wick (*see*, *Kitt v D.M.V. Estates*, 7 AD2d 291, 292) were it not for the fact that he was employed in the same capacity by defendant and was retained by Wick with defendant's knowledge and cooperation. Therefore, inasmuch as the record shows that the manager's services were necessary and were not duplicative of Wick's services, Supreme Court properly allowed the payment of his sal-

ary (compare, Independent Props. Co. v Mast Prop. Investors, 148 AD2d 849, 850; East Chatham Corp. v Iacovone, 26 AD2d 433, 435, appeal dismissed 19 NY2d 687). It should have disallowed the payment of the additional $25,009.95 which Wick claimed was for profit, overhead and other employee-related expenses as there was no documentation supporting these charges (see, Resolution Trust Corp. v Volpe, 912 F Supp 65, 68).

Lastly, the award of the full 5 percent commission to Wick was justified given the extent and duration of its services and the lack of evidence of mismanagement or wasting of assets (see, Matter of Katz [Goldberg], 220 AD2d 590, 591).

Mercure, J. P., Casey, Peters and Carpinello, JJ., concur. Ordered that the order is modified, on the law, without costs, by increasing the surcharge against Wick Realty, Inc. to $142,981.43, and, as so modified, affirmed.