■ PETER JACYNICZ et al., Appellants, v 73 SEAMAN ASSOCIATES et al., Defendants. ANN J. PINCISS, as Receiver, Nonparty Respondent. [704 NYS2d 68] —Order, Supreme Court, New York County (Stephen Crane, J.), entered December 31, 1998, which, in a mortgage foreclosure action, *inter alia*, denied plaintiffs' motion for leave to sue the court-appointed Receiver and rejected some of the surcharges against the Receiver recommended by the Special Referee and surcharged the Receiver $19,011.23, unanimously modified, on the law and the facts, to the extent of increasing the surcharge to $22,521.25 and, except as so modified, affirmed, without costs.

Pursuant to an order dated June 8, 1994, respondent was appointed Temporary Receiver for the premises, the subject of a mortgage foreclosure action commenced by plaintiffs Peter and Lidia Jacynicz against 73 Seaman Associates on May 24, 1994. Plaintiffs, who had originally owned the 24-unit residential building, repurchased the property at a foreclosure sale conducted on April 23, 1996. The order of appointment directed the Receiver to open an account for the deposit of rents, for which the bank was to supply a monthly statement. The order

further directed that the Receiver, after deducting the cost of normal repairs, "first pay the insurance premiums taxes, assessments and water and sewer charges", retaining any balance in the account.

Upon repurchasing the premises, plaintiffs allegedly discovered that a $60,000 tax lien had been filed against the property that they ultimately redeemed for $58,252.26. The Receiver, by contrast, asserts that tax bills had been received by plaintiffs but had not been forwarded to her for payment.

When the Receiver filed her account, the court referred the matter to a Referee to hear and report as to the propriety of certain actions taken and expenses incurred. The Referee conducted an extensive hearing and produced a detailed and well-documented report, which recommended that the Receiver be surcharged for unauthorized expenditures and denied any commission. Plaintiffs moved to confirm the report and for leave to sue the Receiver for waste. The Receiver cross moved to reject the report and approve her account and fees. Supreme Court granted in part the respective motions, to the extent of "surcharging the Receiver $11,331.57 for unnecessary repairs, $5353.06 for inappropriate commissions paid to the managing agent and $2326.60 for inappropriate commissions paid to the Receiver".

It is undisputed that the Receiver failed to abide by the terms of the appointing order in several respects, including neglecting to open a bank account in which to deposit rent receipts and, instead, engaging the services of a managing agent, which was not authorized by the order of appointment. The Referee found that on July 1, 1994, two weeks after her appointment, the receiver signed a management agreement with ABC Realty, to which she abdicated all responsibility for collection of rents, negotiation of leases, maintenance and repairs, deposit of security in an interest-bearing account, registration of dwelling units with the Department of Housing Preservation and Development and collection of statutory rent increases, as determined by the Rent Guidelines Board. The Referee found that the agent failed to file annual registration statements and made no attempt to collect rent increases. Security deposits were intermingled with the agent's general funds. The agent was paid $19,393.14 in fees, exceeding the 6 percent provided for in the agreement by $5,353.06.

From the $234,001.48 received in rents, the managing agent made repairs to the premises totaling $151,571.15, which, in certain instances, were made without adequate documentation of the necessity for the work, the reasonableness of the charges

or even a written receipt. Payments in excess of $80,000 were made to a single contractor, Ricardo Solano, whose invoices and billing practices obscured when and exactly where in the premises the work was performed. Payments to Mr. Solano include $10,925 for electrical and plumbing work for which he held no license and $9,050 for work which may or may not have been performed after the termination of the receivership. The Referee recommended that the Receiver be surcharged $35,949.60 for unnecessary, unreasonable, unauthorized, and unlicenced repairs.

The Receiver conceded she had no personal involvement with the management of the building. Nevertheless, she made interim commission payments to herself in the amount of $9,346.64 without obtaining the court's permission. The Referee found that the Receiver had made no attempt to ascertain the tax status of the premises and concluded that some 14 hours of legal work claimed to have been performed was neither authorized by the appointment order nor justified by billing records.

Supreme Court agreed that the claimed legal services were unauthorized and unsupported by proper records. The court also agreed that the management fees paid to ABC Realty were in excess of the 6 percent provided for in the management contract. As to the repairs performed, the court sustained a recommended surcharge of $11,331.57 for work that the Referee found to be unnecessary and unreasonable, but declined to impose any surcharge for unauthorized and unlicenced work. The court noted that "the building did in fact receive the benefit of having the work done" and it was not shown to be either "inadequate or dangerous." Finally, the court ruled that plaintiffs do not have the right to sue the Receiver personally.

A temporary receiver may exercise only such powers as are granted pursuant to statute (CPLR 6401 [b]), as delimited by court order (*Daro Indus. v RAS Enters.*, 44 NY2d 969, 970 [powers limited to those enumerated in the appointing order]). As this Court observed in *Kaplan v 2108-2116 Walton Ave. Realty Co.* (74 AD2d 786), "A Receiver is an officer of the court and not an agent of the mortgagee or the owner * * * His duty is to preserve and operate the property, within the confines of the order of appointment and any subsequent authorization granted to him by the court" (citing *Knickerbocker Ice Co. v Benson*, 155 Misc 738, 740). A receiver is required to maintain itemized accounts of receipts and expenditures, which remain open to inspection by "any person having an apparent interest in the property" (CPLR 6404), a category that would clearly encompass the interest of a mortgagee.

While the appointing order did not authorize the Receiver to engage the services of a managing agent, the order appealed from indicates that the omission was an apparent oversight and that the court considered it reasonable to employ an agent to manage a 24-unit apartment building. We note further that the building was in poor condition with extensive leaks in the plumbing system and in the roof. Record-keeping deficiencies aside, there is no contention that the work performed was shoddy or amounted to ameliorative waste, even as to work that was compensated after the termination of the receivership; the complaint makes only a conclusory assertion that the value of the work performed was "no more than $30,000 to $40,000". To the same extent, there is support in the record for Supreme Court's conclusion that the cost of necessary repairs left no funds to be applied to the payment of taxes, assessments and water and sewer charges. Furthermore, while plaintiffs make much of the failure to maintain a separate account for tenant security deposits (General Obligations Law § 7-105), there is no record that any such funds were turned over to the Receiver by the defaulting owner (*see, State of New York v Thwaites Place Assocs.*, 155 AD2d 3, 7-9).

As a final observation, it does not appear that plaintiffs ever availed themselves of the opportunity to inspect the Receiver's accounts (CPLR 6404) or made inquiry regarding tax arrears with the New York City Department of Finance until after title to the premises was regained. Their complaints would carry considerably more force had the asserted mismanagement of the property been timely raised before Supreme Court, which could have then issued a supplemental order or even removed the Receiver (CPLR 6405).

Supreme Court was correct in denying leave to sue the Receiver personally on the ground that any relief to which plaintiffs are entitled has been granted by way of the surcharges awarded in this action. The Receiver acted in good faith under the circumstances within the authority conferred by the order of appointment and is not subject to personal liability (*see, Meltzer v Grazi*, 10 AD2d 869, 870, *appeal dismissed* 8 NY2d 911).

We perceive no basis to disturb the rulings with respect to the expenditures made in connection with the maintenance and repair of the premises, which Supreme Court properly made on its independent review of the record, without taking additional testimony (CPLR 4403; *see, Barrett v Stone*, 236 AD2d 323; *Borenstein v Rochel Props.*, 216 AD2d 34). However, in view of the limited oversight of the property by the Receiver,

in the exercise of our review powers (*see, Jordan v Freeman*, 40 AD2d 656; *Mann v Compania Petrolera Trans-Cuba*, 39 AD2d 530), we further reduce her commission to 1.5 percent, thereby increasing the surcharge for inappropriate commissions paid to the Receiver by $3,510.02. Concur—Nardelli, J. P., Rubin, Andrias, Buckley and Friedman, JJ.