■ BANK OF AMERICA, N.A., as Successor by Merger to LA-SALLE NATIONAL BANK, as Trustee for the Certificate Holders of the BEAR STERNS COMMERCIAL MORTGAGE SECURITIES, INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1999-C1, Acting by and through Helios AMC, LLC, in it Capacity as Special Servicer, Appellant, v ONEONTA, L.P., Formerly Known as PITTSFORD CAPITAL MOBILE HOME PARKS, L.P., Defendant. [949 NYS2d 794]—

---

McCarthy, J.

In 1998, defendant executed a consolidated note in the amount of $1,300,000 secured by a mortgage on two parcels of real property each containing a mobile home park. The note and mortgage were subsequently assigned to plaintiff. After defendant defaulted on the note, plaintiff commenced this action to foreclose on the mortgage, seeking to recover the principal and interest due on the note, as well as reimbursement for any expenses incurred during the pendency of the action. Plaintiff concurrently sought to have a receiver appointed for the property. Upon defendant's failure to appear in the action, Supreme Court entered a default judgment against defendant, appointed a receiver for the property and appointed a referee to compute.

During the pendency of the action, plaintiff expended $18,265.34 for real property taxes on the properties, $570 for insurance premiums, $34,361 for environmental assessments, $14,200 for appraisal reports, $40,000 for marketing commissions to a real estate marketing company and $604.42 for miscellaneous expenses, for a total of $108,000.76 in what plaintiff denominated as protective advances.[1] Supreme Court appointed the referee to sell the properties. The referee sold the properties and submitted a report listing a surplus of $267,131.35, after deducting the protective advances paid by plaintiff, plus interest, totaling $112,185.42. Plaintiff moved to confirm the referee's report, discharge the receiver and distribute the surplus funds. Supreme Court, among other things, confirmed all aspects of the report except the $112,185.42, denying that portion on the basis that "no advances were authorized by plaintiff after the appointment of a receiver." The court ordered plaintiff to remit that amount to the treasurer of Otsego County. Plaintiff appeals from that order.

Plaintiff moved to renew or, alternatively, to reargue the portion of the motion addressing the protective advances. Supreme

---

[1] While the action was pending, plaintiff assigned its rights and interest in the judgment of foreclosure. All references herein to plaintiff include plaintiff's assignee as well.

Court accepted copies of invoices and receipts regarding the advances that were included with the referee's report but were inadvertently omitted from some copies of the original motion papers. The court still held that plaintiff was not authorized to make any advances after appointment of the receiver, but permitted reimbursement to plaintiff for amounts it paid for taxes and insurance, without interest. The court denied reimbursement for the remainder of the expenditures, finding that they were not necessary and were for plaintiff's benefit. Thus, the court ordered plaintiff to remit $93,350.08 to the County treasurer. Plaintiff also appeals from that order.

The mortgage expressly permitted plaintiff to pay numerous expenses under certain circumstances and to recover those payments. The mortgage states that it secured not only the payment of principal and interest, but also "the payment of all sums advanced and costs and expenses incurred by [plaintiff] in connection with the [d]ebt," as well as securing the performance of all of defendant's obligations under the agreement. A provision permits plaintiff to make any payments or perform any actions required under the mortgage if defendant defaults in its obligations thereunder, with such expenses constituting a portion of the debt secured by the mortgage. Separate provisions of the mortgage required defendant to obtain and maintain insurance and pay all taxes on the property (see Real Property Law § 254 [6]). Another provision permitted any entity designated by plaintiff to enter the property to conduct an environmental assessment or audit, with the costs to be borne by plaintiff unless a report or assessment is performed due to defendant's failure to comply with its obligations or following a default on the mortgage, in which case defendant would be responsible for such expenses. Defendant also agreed, in the mortgage, to pay the costs of any reappraisal of the property in certain circumstances, including if plaintiff requires a reappraisal following a default. Hence, in the event of defendant's default under the mortgage, as occurred here, that document authorized plaintiff to pay the taxes, maintain insurance, and obtain appraisals of the property and environmental assessments, with those expenses—advanced to protect plaintiff's security interest—becoming part of the debt owed under the mortgage (see White v Wielandt, 259 App Div 676, 679-680 [1940], affd 286 NY 609 [1941]).

On the other hand, no provision of the mortgage permitted plaintiff to retain a real estate marketing company or pay commissions for promoting the property prior to a foreclosure sale. While those services may have resulted in higher bidding and

purchase prices for the properties, inuring to the benefit of both plaintiff and defendant, the mortgage did not authorize plaintiff to engage a company to provide those services. Accordingly, Supreme Court correctly disallowed reimbursement to plaintiff for the marketing commissions and miscellaneous expenses.

Supreme Court did not abuse its discretion in declining to reimburse plaintiff for payments other than for taxes and insurance, as they were paid without court approval after a receiver was appointed. A receiver, who "is an officer of the court and not an agent of the mortgagee or the owner," has a duty "to preserve and operate the property, within the confines of the order of appointment and any subsequent authorization granted to him [or her] by the court" (*Kaplan v 2108-2116 Walton Ave. Realty Co.*, 74 AD2d 786, 786 [1980]; *see Matter of Kane [Freedman—Tenenbaum]*, 75 NY2d 511, 515 [1990]; *Jacynicz v 73 Seaman Assoc.*, 270 AD2d 83, 85 [2000], *lv denied* 95 NY2d 761 [2000]; *Constellation Bank v Binghamton Plaza*, 236 AD2d 698, 698 [1997]). "During the pendency of the receivership, the property is, in essence, in the possession of the court itself" (*Trustco Bank, Natl. Assn. v Eakin*, 256 AD2d 778, 779 [1998] [citation omitted]). The May 2009 order appointing the receiver authorized him to, among other things, collect rents, enforce leases, act as property manager, take reasonable steps to protect the premises, pay outstanding taxes and procure insurance (*see* RPAPL 1325 [2]; *see also* CPLR 6401 [b]). The receiver was not authorized to make repairs exceeding $1,500 or to appoint agents, including appraisers, without prior court authorization (*see* CPLR 6401 [b]; *see also* 22 NYCRR 36.1 [a] [10]; 36.2 [a], [b]; *Kitt v D.M.V. Estates*, 7 AD2d 291, 292 [1959]; *compare Litho Fund Equities v Alley Spring Apts. Corp.*, 94 AD2d 13, 15 [1983], *appeal dismissed* 60 NY2d 859 [1983]). Once a receiver was appointed, it was his responsibility to pay the taxes and other necessary expenses and to preserve and maintain the premises (*see Fourth Fed. Sav. Bank v 32-22 Owners Corp.*, 236 AD2d 300, 301-302 [1997]). Plaintiff, who requested the appointment of a receiver, no longer had the authority to perform these duties once the court appointed its own agent—a receiver—to do so. As the receiver would not have been authorized to pay for appraisals or the environmental assessments without court approval, plaintiff was not entitled to reimbursement after it paid these expenses without court approval. The prudent course for plaintiff would have been to seek court approval in advance of undertaking any actions that might be deemed ultra vires and obtaining permission to act and add the expenditure to the amount of its judgment, or move to expand the receiver's powers and have the court authorize him to

undertake those actions or make those expenditures (*see Trustco Bank, Natl. Assn. v Eakin*, 256 AD2d at 780; Alexander, Practice Commentaries, McKinney's Cons Law of NY, Book 7B, CPLR C6401:3 at 411).

Notwithstanding the absence of prior judicial approval, Supreme Court could, in the exercise of its discretion, approve payment of the unauthorized expenses (*see Constellation Bank v Binghamton Plaza*, 236 AD2d at 698-699). In the amended final judgment of foreclosure and sale, Supreme Court authorized the referee to pay plaintiff not only the computed principal balance with interest, but also "any advances as provided for in the note and mortgage, which plaintiff has made for taxes, insurance, . . . or to maintain the premises pending consummation of this foreclosure sale," with interest. This order did not distinguish whether it permitted reimbursement for the payment of such expenses prior to or subsequent to the appointment of a receiver. Regardless of which interpretation is used, reimbursement should only be approved for expenditures that are necessary to maintain the premises (*see Kaplan v 2108-2116 Walton Ave. Realty Co.*, 74 AD2d at 786; *Long Is. City Sav. & Loan Assn. v Bertsman Bldg. Corp.*, 123 AD2d 840, 841 [1986]; *see also Sun Beam Enters. v Liza Realty Corp.*, 210 AD2d 153, 154 [1994]).[2] Expenses for appraisals, environmental assessments and marketing commissions were related to preparing for, and maximizing the bids and profits from, the foreclosure sale. These expenses were not necessary to maintain the property or preserve its condition. Thus, although the higher sale prices of the properties may have inured to the benefit of defendant as well as plaintiff, the court did not abuse its discretion in refusing to permit reimbursement to plaintiff for these expenses incurred after the appointment of a receiver, despite the inclusion of such expenses as part of the debt in the mortgage.

Mercure, J.P., Kavanagh, Stein and Egan Jr., JJ., concur. Ordered that the orders are modified, on the law and the facts, without costs, by reversing so much thereof as denied plaintiff's request for interest on the $18,835.34 it paid for taxes and insurance; matter remitted to the Supreme Court for a calculation of the interest due to plaintiff; and, as so modified, affirmed.

---

2. Upon reargument, Supreme Court did permit reimbursement to plaintiff of the amount paid for taxes and insurance, but without interest. These expenses were necessary and should have been paid by the receiver, and the final judgment of foreclosure authorized reimbursement of payments for taxes with interest. Under the circumstances, plaintiff should have been paid interest on the $18,835.34.