Wells Fargo Bank, N.A. v Bronx 1202 Spofford Ave. L.P. (2025 NY Slip Op 50931(U))

[*1]

Wells Fargo Bank, N.A. v Bronx 1202 Spofford Ave. L.P.

2025 NY Slip Op 50931(U)

Decided on June 6, 2025

Supreme Court, Bronx County

Gomez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 6, 2025
Supreme Court, Bronx County

Wells Fargo Bank, National Association, 
 AS TRUSTEE, ON BEHALF OF THE REGISTERED HOLDERS OF SBALR COMMERCIAL MORTGAGE 2020-RR1 TRUST, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2020-RR1, Plaintiff(s),

against
Bronx 1202 Spofford Avenue L.P., BRONX 444 EAST 187TH STREET L.P., 
 BRONX 441 EAST 187TH STREET L.P., ISAAC KASSIRER, ELMAX BUILDERS SUPPLY LLC and NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, Defendant(s)

Index No. 805166/24E

Counsel for Plaintiff: McCarter & English, LLP
Counsel for Defendants: Sukenik, Segal, & Graff, PC
Counsel for Nonparties: Bronx Legal Services

Fidel E. Gomez, J.

In this action for foreclosure on a mortgage and the sale of the real property pledged as security, non parties Iris Garcia, Maria Abreu, Elida Mariano de Guerrero, Minerva Santos, Allah Jackson, Jessica Gonzalez, Rudh Ortiz, Clementina Rafaelina Lopez, Jenny Reinoso de Castillo, Sheena Russell, Juan Reyes, Darwin Garcia, Allasane Guigma, Erick Montas, Manuel Ruiz, Deborah Wilson and Nicole Brown (hereinafter, collectively referred to as "intervenors") seek an order allowing them to intervene in this action to, inter alia, obtain leave to name William G. Forero (Forero), the receiver in this action, as a respondent in a summary proceeding venued in the Housing Part of the Civil Court of the City of New York, Bronx County. Saliently, intervenors aver that any judgment in this action would bind them and affect the summary proceeding. Plaintiff opposes the instant motion, asserting, inter alia, that pursuant to well settled law, since intervenors are not parties to this action, any judgment would leave their rights intact and would have no effect on them. Thus, plaintiff contends that there is no basis for intervention. Moreover, insofar as Forero, as receiver, has an independent obligation imposed by this Court to maintain the mortgaged premises, he is obligated to remediate any conditions thereat, and has only recently been appointed as receiver, there is no basis to name him in the summary proceeding brought against the owner of the mortgaged premises.
For the reasons that follow hereinafter, intervenors' motion is denied.
The instant action is for foreclosure on a mortgage and the sale of the real properties pledged as security. BRONX 1202 SPOFFORD AVENUE L.P. (Bronx), BRONX 444 EAST [*2]187TH STREET L.P. (Bronx 1), and BRONX 441 EAST 187TH STREET L.P. (Bronx 2) executed a loan agreement and a note, whereby they agreed to repay nonparty Sabal Capital II, LLC (Sabal) a loan in the amount of $14,669,586. In order to secure the note, the foregoing defendants executed a mortgage wherein they pledged real property located at 1202 Spofford Avenue, Bronx, New York 10474 (1202), 444 East 187th Street, Bronx, New York 10458 (444), and 441 East 187th Street Bronx, New York 10458 (441) as collateral. In order to further secure the loan, on October 11, 2019, Kassirer executed a limited non recourse guaranty. Pursuant to the loan agreement, beginning on December 6, 2019 Bronx, Bronx 1, and Bronx 2 were required to make monthly interest only payments on the loan and, on November 6, 2029, all sums under the loan were due. Moreover, pursuant to the loan agreement, the failure to make a payment when due was a default thereunder. In the event of a default, the loan agreement authorized Sabal to institute an action to foreclose on the mortgage and sell 1202, 444, and 441. On April 6, 2023, Bronx, Bronx 1, and Bronx 2 failed to make a payment then due and therefore, defaulted. In failing to pay all sums due plaintiff, Kassirer breached the limited recourse guaranty. As of March 4, 2020, plaintiff owns and holds the note, mortgage, and loan agreement. Based on the foregoing, plaintiff seeks a judgment allowing it to foreclose and sell 1202, 444, and 441, and by virtue of Kassirer's breach of the guaranty, a deficiency judgment against him.
On August 29, 2024, this Court granted plaintiff's ex parte application seeking the appointment of a receiver, appointing Forero as receiver. Notably, because there was no evidence that 1202, 444, and 441 were in danger of irreparable loss or damage, the Court limited the receiver's powers in this action. To be sure, the Court held that
while unpaid penalties and water charges could result in liens against the premises, this is not tantamount to irreparable loss or damage. However, although the record is bereft of a showing that the property is in jeopardy, the mortgage entitles plaintiff to the appointment of a receiver of the rents and profits and the borrowers have unconditionally assigned to plaintiff the authority to collect and receive all rents. As such, the Court grants plaintiff's application for the appointment of a receiver with the limited power to collect all rents and apply said rents to the maintenance of the mortgaged premises.
To that end, the Court limited the receiver's powers stating that Forero be appointed as receiver
(1) with the power to collect any and all rents now due and to become due during the pendency of this proceeding and issuing out of the mortgaged property; (2) with the power to pay the expenses of the management and care of said premises and retain the balance of the monies until the sale of the premises; and (3) with the power to institute and carry all legal proceedings necessary for the protection of said premises.
On October 31, 2024, this Court formalized Forero's appointment by issuing an order in accordance with the prior Decision and Order.
On January 10, 2025, Forero filed the bond imposed by this Court and on the same date, he also filed his oath. 
On March 13, 2025, after a conference wherein Bronx, Bronx 1, Bronx 2, and Kassirer consented to the appointment of a receiver with the power to usurp all control of 1202, 444, and 441, this Court issued an order amending its prior Decision and Order and issued an Ex Parte Order Appointing a Rent Receiver augmenting Forero's powers.
On April 14, 2025, this Court issued a Decision and Order granting Forero's application [*3]to appoint a property manager to aid him in the management of 1202, 444, and 441. The Court directed Forero to submit an order formalizing the appointment of CAM Property Management Group (CAM) as the property manager for 1202, 444, and 441.
 Applicable Law

 Intervention
CPLR §§ 1012 and 1013 govern circumstances where non-parties to an action can intervene and be made parties thereto. CPLR §1012 (a), governing intervention as a matter of right, states that
[u]pon timely motion, any person shall be permitted to intervene in any action 1. When a statute of the state confers an absolute right to intervene; or 2. When the representation of the person's interest by the parties is or may be inadequate and the person is or may be bound by the judgment; or 3. When the action involves the disposition or distribution of, or the title or a claim for damages for injury to, property and the person may be affected adversely by the judgment.
CPLR § 1013, governing permissive intervention, reads that
[u]pon timely motion, any person may be permitted to intervene in any action when a statute of the state confers a right to intervene in the discretion of the court, or when the person's claim or defense and the main action have a common question of law or fact. In exercising its discretion, the court shall consider whether the intervention will unduly delay the determination of the action or prejudice the substantial rights of any party.
Irrespective of what kind of intervention is sought, the relevant inquiry is whether the party seeking to intervene has a real and substantial interest in the outcome of the litigation (Agostino v Soufer, 284 AD2d 147, 148 [1st Dept 2001]; County of Westchester v Dept. of Health of State of NY, 229 AD2d 460, 461 [2d Dept 1996]; Vantage Petroleum v Bd. of Assessment Review, etc., of Town of Babylon, 91 AD2d 1037, 1040 [2d Dept 1983], affd sub nom. Vantage Petroleum v Bd. of Assessment Review of Town of Babylon, 61 NY2d 695 [1984]; Plantech Hous., Inc. v Conlan, 74 AD2d 920, 921 [2d Dept 1980]). If the intervenor has a real and substantial interest in the outcome of the litigation, intervention should be allowed (Agostino at 148 [Court allowed intervenor to intervene as a plaintiff where the action by the original plaintiff sought to enforce an agreement requiring defendant to transfer property purchased at a foreclosure sale to the plaintiff. Since intervenor was a party to the original agreement, the court held that he had a real and substantial interest in the outcome of the action.]; County of Westchester at 461 [Court allowed intervenors to intervene as defendants in an action where plaintiff's sought to declare regulations implemented by defendant affecting the reallocation of bad debt and charity cost null and void. Since the intervenors were defendants who stood to benefit from the regulations at issue, the court held that they had a real and substantial interest in the outcome of the litigation.]; Plantech Hous., Inc. at 921).

Leave to Sue a Receiver
A receiver appointed in a foreclosure action may not be sued in his official capacity as receiver absent leave of court (Copeland v Salomon, 56 NY2d 222, 228 [1982]; Schwartz v Kurlander, 279 AD2d 465, 465 [2d Dept 2001]; Chase Manhattan Bank, N.A. v Kress, 131 AD2d 807, 807 [2d Dept 1987]; Indep. Sav. Bank v Triz Realty Corp., 100 AD2d 613 [2d Dept 1984]). If the receiver has been discharged prior to leave to initiate an action against him/her, in [*4]addition to seeking leave, the proponent of the suit must also seek to have the order which discharged the receiver vacated (Gadson v 1340 Hudson Realty Corp., 180 AD2d 582, 583 [1st Dept 1992]; Laguerre v See Bel Realty Corp., 90 AD2d 707, 707 [1st Dept 1982]; 149 Clinton Ave. N., Inc. v Grassi, 51 AD2d 502, 506 [4th Dept 1976]). Leave to sue a receiver is a condition precedent to the initiation of an action against him/her, not a jurisdictional defect, and thus, the failure to seek such leave is curable (Copeland at 230; Hirshfeld v Kalischer, 30 NYS 1027, 1027 [NY Gen Term 1894]; Shahid v MHANY Mgt., Inc., 179 AD3d 966, 967 [2d Dept 2020]). Accordingly, when an action is initiated against a receiver in his/her official capacity absent leave of court, the court may either consider the action until someone either seeks leave to sue the receiver or dismiss the action for the failure to seek leave, stay the action pending an application to for leave to sue the receiver nunc pro tunc, or dismiss the action without prejudice to recommencement after leave to sue the receiver is obtained (Copeland at 230; Hirshfeld at 1027; Shahid at 967; Indep. Sav. Bank at 614).
The rationale for requiring leave before a receiver is sued is that since a receiver is appointed to preserve the property in his/her charge, the receiver should be shielded from "harassment and expense of possibly unnecessary litigation" (Copeland at 228) and that "interference with the property by the bringing of an action without leave may constitute contempt" against the receiver (id. at 228; Schwartz at 465 ["This rule is based on a concern for the protection of the assets in receivership, from which any judgment obtained against a receiver in his or her representative capacity would be paid."]). Indeed, any damages recovered by a third-party who sues the receiver are payable from the receivership funds collected by the receiver (Copeland at 232 ["Damages for injuries to persons or property during the receivership caused by the negligence of the receiver or his agents or employees are part of the expenses of administration payable out of receivership funds or out of the property held by the receiver and as such entitled to priority over creditors whose claims precede the receivership."]; N. Side Sav. Bank v Arieh, 234 AD2d 169, 169 [1st Dept 1996]).
General Obligations Law § 9-101 states that
[a] receiver of rents and profits appointed in an action to foreclose a mortgage upon real property shall be liable, in his official capacity, for injury to person or property sustained by reason of conditions on the premises, in a case where an owner would have been liable. Nothing herein contained shall be construed to enlarge the liability of the receiver in his personal capacity.
Thus, generally, leave to sue a receiver should be granted when it is established that the receiver may bear liability to a third-party for injuries sustained at the property in the receiver's charge while the receiver was tasked with the maintenance of the same.
Hence, in Copeland the court granted leave to sue the receiver when plaintiff in the action against the receiver alleged that he was injured while traversing the common stairway at the property for which the receiver was appointed to maintain (id. at 225). In granting leave to sue the receiver, the court noted that the receiver was tasked with the maintenance of the property within which plaintiff was injured and to which the receiver "was subject in his official capacity to liability to plaintiffs whether the negligence in maintenance of the stairway was active or passive" (id. at 231-232). Contrariwise, leave to sue a receiver should be denied when the proponent seeking leave fails to establish that the receiver bears liability in his/her official [*5]capacity for the acts alleged to have been committed by him/her and which undergird the proposed law suit (Bankers Fed. Sav. FSB v Off W. Broadway Developers, 227 AD2d 306, 306 [1st Dept 1996] ["defendants-appellants' claims against the receiver for damages to buildings adjoining the subject premises, relating to damage to pipes resulting from termination and reconnection of heat and hot water services, are not supported by the record. Further, the claims were properly denied as the receiver had no personal liability for the actions performed within his official capacity and within the scope of his authority pursuant to the receivership order. There was no covenant, easement or encumbrance requiring provision of heat and hot water from the system in the subject premises to the adjoining buildings and no showing of easement by implication or prescription" [internal citations omitted].).
Notably, when a person seeks add a receiver as a party to an action in Housing Court, leave of court is required (Indep. Sav. Bank at 613-614 ["Focusing on this rationale, we conclude that an action or proceeding to enforce a housing code comes within the rule. A suit which seeks correction of housing violations affects the res insofar as the costs of litigation, the expense of remedying any violations, and the payment of any penalties would presumably have to be borne by the receivership administration, the money coming from receivership funds or out of the property itself."]).

Discussion
Intervenors' motion seeking to intervene in this action in order to (1) join the receiver as a party in the summary proceeding commenced by intervenors against, inter alia, Bronx for repairs at 1202; and (2) amend the order which appointed Forero as receiver to require the receiver to prioritize the amelioration of all violations issued by New York City Department of Housing and Preservation (HPD) at 1202, is denied. Significantly, insofar as intervenors were never named as defendants in this action, as a matter of law, any judgment issued in this action will not affect their rights in relation to their status as tenants at 1202.
In support of the instant motion, intervenors submit a document, which evinces that between June 17, 1996 and February 25, 2025, HPD issued a multitude of violations to Bronx for hazardous conditions existing at 1202. The conditions include the failure to correct lead paint hazards within various apartments, the failure to abate rodent infestations within various apartments and the failure to repair broken or defectively plastered surfaces. 
Intervenors submit a letter, dated April 10, 2024, sent to Bronx by intervenors' counsel wherein intervenors list a host of defective conditions within their apartments, such as a collapsed ceiling, cracked floors, leaks, defective appliances, and rodent infestations, and in which intervenors seek remediation of the foregoing conditions.
Based on the foregoing, the motion to intervene is denied.
As noted above, irrespective of what kind of intervention is sought, meaning permissive or intervention as a matter of right, the relevant inquiry is whether the party seeking to intervene has a real and substantial interest in the outcome of the litigation (Agostino at 148; County of Westchester at 461; Vantage Petroleum at 1040; Plantech Hous., Inc. at 921 [2d Dept 1980]). If the intervenor has a real and substantial interest in the outcome of the litigation, intervention should be allowed (Agostino at 148; County of Westchester at 461; Plantech Hous., Inc. at 921).
Here, because intervenors were not named defendants and do not seek such relief, as a matter of law, the outcome of this action will in no way affect their rights as tenants at 1202. 
To be sure, RPAPL § 1311(1) states that in an action sounding in foreclosure a necessary defendant is, inter alia,
[e]very person having an estate or interest in possession, or otherwise, in the property as tenant in fee, for life, by the curtesy, or for years, and every person entitled to the reversion, remainder, or inheritance of the real property, or of any interest therein or undivided share thereof, after the determination of a particular estate therein.
Indeed, since the objective of a foreclosure action is "to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale" (6820 Ridge Realty LLC v Goldman, 263 AD2d 22, 26 [2d Dept 1999] [internal quotation marks omitted]; Polish Nat. All. of Brooklyn, U.S.A. v White Eagle Hall Co., Inc., 98 AD2d 400, 404 [2d Dept 1983]), it is well settled that tenants residing at the premises sought to be sold at foreclosure are necessary parties in an action to foreclose a mortgage (6820 Ridge Realty LLC at 25; see 1426 46 St., LLC v Klein, 60 AD3d 740, 742 [2d Dept 2009]; Flushing Sav. Bank v CCN Realty Corp., 73 AD2d 945, 945 [2d Dept 1980]). Nevertheless, however, the failure to join a necessary party in a foreclosure action leaves that party's rights unaffected and the sale at foreclosure void as to that party (Polish Nat. All. of Brooklyn, U.S.A. at 406; 1426 46 St., LLC v Klein, 60 AD3d 740, 742 [2d Dept 2009]; 6820 Ridge Realty LLC at 26).
Accordingly, here, while the intervenors and indeed all tenants at 1202 should have been named as defendants, the failure to do so actually inures to their benefit. In other words, since the tenants are not named defendants their rights remain unaffected by any judgment issued in this action. Additionally, pursuant to RPAPL § 1305(2), any rights conferred upon a tenant by the lease generally survive foreclosure and the sale of the mortgaged property (RPAPL § 1305[2] [" Notwithstanding any other provision of law, a tenant of a unit not subject to rent control or rent stabilization shall have the right to remain in occupancy of the unit of the subject residential real property where he or she resides on the date of service of the notice required by subdivision three of this section for the greater of: (a) a period of ninety days from the date of the service of such notice; or (b) for the remainder of the lease term if the tenant occupied the premises at the commencement of the foreclosure action or received a notice pursuant to section thirteen hundred three of this article; or (c) for the remainder of the lease term, provided that the lease agreement was entered into in good faith pursuant to this section and federal law, up to a maximum of three years, for tenants who did not occupy the premises at the commencement of the foreclosure action and therefore did not receive the original notice of service required pursuant to section thirteen hundred three of this article; provided that if a successor in interest who acquires title to such residential real property intends to occupy a single unit as his or her primary residence and the unit is not subject to a federal or state statutory system of subsidy or other federal or state statutory scheme, the successor may limit for one unit only, the tenant's right of occupancy to ninety days."]). Indeed, even if intervenors had been made defendants, their tenancy rights would be unaffected by any outcome in this action. 
Accordingly, irrespective of the outcome of this action, which is merely to foreclose on the mortgage and sell 1202, intervenors' rights remain unaffected. As such, as a matter of law, intervenors have no real or substantial interest in the outcome of this litigation so as to warrant intervention. The motion to intervene is therefore denied.
Notably, intervenors conflate having an interest in the outcome of this action with possessing a right to compel Bronx, as landlord, to maintain 1202, only the latter warranting intervention. There is, of course, no question that intervenors have an absolute right to compel Bronx to properly maintain 1202. However, such right is wholly unrelated to the issues in this action, which, again, seeks foreclosure on the mortgage. Such relief will have zero impact on intervenors rights as tenants at 1202. 
To the extent that intervention is required for the remainder of the relief sought by intervenors, the remainder of the motion is also denied.
Nevertheless, while academic, it is worth discussing why even if intervention had been granted, leave to name Forero as a respondent in the relevant summary proceeding would have been denied.
As noted above, when parties seek to name a receiver as a respondent in a summary proceeding, such relief is akin to seeking leave to sue the receiver and leave of court is required (Indep. Sav. Bank at 613-614). Moreover, generally, leave to sue a receiver should be granted when it is established that the receiver may bear liability to a third-party for injuries sustained at the property in the receiver's charge while the receiver was tasked with the maintenance of the same (Copeland at 225). Conversely, leave to sue a receiver should be denied when the proponent of leave fails to establish that the receiver bears liability in his/her official capacity for the acts alleged to have been committed by him/her and which undergird the proposed law suit (Bankers Fed. Sav. FSB at 306). Accordingly, it follows that if there is no basis to name a receiver as a respondent in a summary proceeding, leave for such relief must be denied.
Here, what intervenors impermissibly seek is leave to allow another court to order what has already been directed in this action, namely that Forero, as the receiver, maintain 1202, which necessarily means that he must undertake to ameliorate all hazardous conditions thereat.
To be sure, a receiver is charged with "preserv[ing] and operat[ing] the property, within the confines of the order of appointment and any subsequent authorization granted to him by the court" (Jacynicz v 73 Seaman Assoc., 270 AD2d 83, 85 [1st Dept 2000] [internal quotation marks omitted].), and his/her powers are limited to those enumerated in the appointing order (Daro Indus., Inc. v RAS Enterprises, Inc., 44 NY2d 969, 970 [1978]). As to the ambit of a receiver's general powers, CPLR § 6401(b), states that
[t]he court appointing a receiver may authorize him to take and hold real and personal property, and sue for, collect and sell debts or claims, upon such conditions and for such purposes as the court shall direct. A receiver shall have no power to employ counsel unless expressly so authorized by order of the court. Upon motion of the receiver or a party, powers granted to a temporary receiver may be extended or limited or the receivership may be extended to another action involving the property.
To that end, here, the Ex Parte Order Appointing a Rent Receiver, issued by this Court on March 13, 2025, appointing Forero as the receiver at 1202, authorizes Forero to
make any reasonable and necessary ordinary repairs and maintenance to the Mortgaged Property, provided that any nonemergency repair or maintenance expense anticipated to be in excess of $5,000 shall be subject to the prior written approval of Lender
(NY St Cts Elec Filing [NYSCEF] Doc No. 30 at 11). Here, although intervenors fail to annex [*6]the petition in the pending summary proceeding, the Court nevertheless reviewed the same [FN1]
. The petition in Garcia, et al. v Kassirer, et al., (LT-326998-24/BX), evinces that intervenors seek an order pursuant to NYCCA §§ 203(k) and 203(n) compelling, inter alia, Bronx to ameliorate the hazardous conditions within intervenors apartments (NY St Cts Elec Filing [NYSCEF] Doc No. 1 at 5).
Based on the foregoing, in addition to plaintiff's prematurity argument, namely that Forero has not yet been able to assess the extent of the repairs needed at 1202, leave to add Forero as a respondent to the summary proceeding is unnecessary, would be a waste of judicial resources, and would unnecessarily hinder Forero's duty to discharge this Court's order.
Again, the sole purpose of the relief requested by intervenors is to compel Foereo to address and remediate the conditions at 1202. However, as already noted, this Court has already ordered Forero to assess the conditions at 1202 and make all the necessary repairs. Thus, there is simply no reason to grant leave to add Forero as a respondent to the pending summary proceeding, wherein he will conceivably be compelled to do the very thing that this Court has already ordered him to do - maintain and make necessary repairs at 1202.
To the extent that intervenors' request that the Court amend the order which appointed Forero to prioritize the repair of the conditions within 1202 for which HPD has issued violations, such relief is denied, since again, notwithstanding that intervention has been denied, such relief is implicit in the Ex Parte Order Appointing a Rent Receiver which appointed him. It is hereby
ORDERED that plaintiff serve a copy of this Decision and Order with Notice of Entry upon all parties, including the intervenors within thirty (30) days hereof.
This constitutes this Court's decision and Order.
Dated : June 6, 2025
Bronx, New York
HON. FIDEL E. GOMEZ, JSC

Footnotes

Footnote 1:It is well settled that a court can take judicial notice of any and all undisputed court records and files (Khatibi v Weill, 8 AD3d 485, 485 (2d Dept 2004). Indeed, this rule includes the court's own court files and extends to files related to proceedings in other courts (MJD Construction, Inc. v Woodstock Lawn & Home Maintenance, 299 AD2d 459, 459 [2d Dept 2002]; Ptasznick v Schultz, 247 AD2d 197, 199 [2d Dept 1998]; Warner v Board of Education of the City of New York, 14 AD2d 300, n1 [1st Dept 1961]). When a court chooses to take judicial notice of records, it obviates a foundation for purposes of admitting said documents in evidence (Bernasconi v Aeon, LLC, 105 AD3d 1167, 1169 [3d Dept 2013]; Lagano v Soule, 86 AD3d 665, 667, n 5 [3d Dept 2011]; Secretary of Dept. of Hous. and Urban Dev. v Torres, 2 Misc 3d 53, 55 [App Term 2003]).